[Department Two. — June 29, 1883.]

## ODD FELLOWS MUTUAL AID ASSOCIATION OF SAN FRANCISCO et al., Appellants, *v.* WALLACE T. JAMES et al., Respondents.

Corporation — Money Lost by Theft — Liability of Officer. — The secretary of a corporation, whose duty it is to receive all moneys due the corporation, and pay the same over to the treasurer, must exercise reasonable diligence in paying over any moneys received by him, and if he fail to do so, and the moneys are stolen from him, he is liable therefor.

ID.—BOND—LIABILITY OF SURETIES.—The sureties on a bond given by the secretary to the corporation, conditioned for the faithful performance of his duties, are also liable for moneys stolen under such circumstances. The violation of duty on his part in failing to pay the moneys over constitutes a breach of the bond.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*J. F. Cowdery*, for Appellant, cited *Boyden* v. *United States*, 13 Wall. 17; Metcalf on Contracts, 213; *The Harriman*, 9 Wall. 161; *Muzzy* v. *Shattuck*, 1 Denio, 233; *State* v. *Harper*, 6 Ohio St. 607; *United States* v. *Prescott*, 3 How. 578; *United States* v. *Dashiel*, 4 Wall. 182; *United States* v. *Keehler*, 9 Wall. 83; *Bevan's Receiver* v. *United States*, 13 Wall. 56.

*R. Thompson*, for Respondent, cited *Atlantic & N. C. R. R. Co.* v. *Cowles*, 69 N. C. 59; *Walker* v. *Brit. Guarrantce Asso.* 18 Q. B. 276; *American Bank* v. *Adams*, 12 Pick. 303; *Minor* v. *Mech. Bank*, 1 Peters, 46; *Huntsville Bank* v. *Hill*, 1 Stewt. 201.

THORNTON, J.—This is an action upon a bond for five thousand dollars executed by the defendants to the plaintiff, with this stipulation, that whereas Wallace T. James has been elected secretary of the Odd Fellows Mutual Aid Association for the year commencing on the fifth day of February, 1878, and until his successor shall have been duly elected and qualified, now if the said James "shall in all respects fully, faithfully, well and truly perform all the duties of his said trust according to the constitution, by-laws, rules, and regulations of said association, and at the end of his official term surrender all books, papers, money, or sureties" (*sic*) belonging to or appertaining to his office, to such person or persons as said association may direct, then the bond was to be void, otherwise not.

The breach of the bond assigned in the complaint is the failure of James to pay over to the treasurer of said corporation the sum of $1,455.25, moneys of the corporation received by him (James) as secretary, while he was in office as such, in the

year 1878, and before the 15th of August in that year, which payment to the treasurer it was his duty to make under the by-laws, rules, and regulations of the corporation. It is further averred that the corporation, by its treasurer, demanded of James the payment of the sum of money mentioned, which he refused to pay to him, and that it has never been paid. None of the allegations of the complaint are denied by the answer, except as hereinafter stated, but the defendants set up in defense that the corporation was conducting and carrying on its business in a building known as the Odd Fellows' Hall Building in the city of San Francisco, that James, as secretary, was required by the association to occupy and do the business of the corporation in its office during all the times mentioned in the complaint, that the corporation furnished its office with an iron safe for the purpose of safely keeping its books, papers, and moneys; that in the usual and ordinary manner of .doing the business of the corporation, the secretary (James) was accustomed to and did receive the funds of the corporation as the same were paid in from time to time, and deposit them in the safe above mentioned; that it was the usual and ordinary way of conducting the said business for James, the secretary, to allow the said funds to remain in the safe until the treasurer of the corporation called to receive them, that James did receive the sum of money mentioned in the complaint, and, as was his usual custom and the custom of doing business, placed the same in the safe aforesaid; that after this money had been deposited in the safe, and before the treasurer called for or made any demands for it or any part of it, some person or persons unknown, in the night time, broke open the safe, and stole and carried away the money, without the knowledge or consent of James, and without any neglect or default on his part. The defendants further aver that James, in all things and at all times, faithfully performed all the duties of his trust according to the constitution, by-laws, rules, "*and usages of the said association*"; that at the time the treasurer made the demand on him he did not have the sum of money mentioned, and that it was not his duty to pay over this money, or any part of it, to the treasurer, or in any way reimburse the corporation "for the said loss or any part thereof."

We think it best to·insert here the findings of the court below as to the facts of the case, which are as follows:—

"That the defendants made, executed, and delivered the bond attached to the complaint at the time alleged; that by the constitution, by-laws, rules, and regulations of said association mentioned in the condition of said bond, the.secretary, Wallace T. James, was required to keep all the books of account of the association, to receive all the moneys of the association, giving his receipt for the same; to pay over all moneys in his possession belonging to the association to the treasurer, taking his receipt therefor; to write and send all notices and communications called for.by the rules of the association to its members, to make a written report of the transactions and condition of the association at the annual meeting in each year, and at such other meetings as the board of directors or association should direct; that there were no other duties which the secretary was required to perform, and that the said bond was given for the performance of these duties, and these only; that there was no contract or undertaking whatever by which the said James undertook or agreed to be the insurer of moneys or goods in his charge, or received by him as secretary; but that his undertaking, with reference to the custody of the moneys received by him as secretary, was to keep them, under the direction of the association, and in the place and manner directed by the association; that said James was furnished by the association with an office, in which was a safe for the purposes of the transaction of business, and the custody of money and other valuables; that during the continuance of his term of office, the said James received money to the amount of $1,455.25, and deposited the same in the said safe, furnished by the said association; that while in said safe, and during the night of August 6, 1877, the said office was broken into and said money stolen by some unknown person, without the knowledge, agency, or assent of said James.

"And the court finds as a fact that the said James was not guilty of any negligence in the custody or care of said money, but that he faithfully performed all the duties of his said office; that he failed to pay over said $1,455.25, solely because the same was stolen from him as above found; that the said safe

and office was not a fit or proper place for the keeping of said money, but that it was the place provided by the association for the purpose, and that the fact that it was not a proper place for the keeping of said money was known to the association at all times previous to the robbery above mentioned."

Judgment passed for defendants following the conclusions of law arrived at by the court.

The court below treated the case as one for the custody and safe-keeping of moneys by the secretary, which it clearly is not, any further than this: that he was to keep the money for such reasonable time as was required for him to deposit it with the treasurer. There is no such contract on the part of the defendant. The contract of defendant as shown by the bond, which was admitted as set forth by the complaint and as found by the court, was to receive the moneys of the association and pay them over to the treasurer, taking his receipt for the same.

On a motion for a new trial the findings of the court were assailed on the ground that the evidence was insufficient in several specified particulars to justify the findings of the court. We shall notice the following of the particulars specified: First — That the undertaking of the secretary was to keep the money received by him as secretary under the direction of the association, in the place and manner directed by the association. Second — That the association furnished or provided James with a safe for the purpose of the custody of the money belonging to the association. Third — That the defendant James was not guilty of any negligence in the custody or care of the money sued for, and that he faithfully performed the duties of his office.

We are of opinion that the evidence establishes the contrary of that found by the court, as stated in the above particulars. There was nothing in the conduct of the board of directors, taking the testimony of the defendant James himself, which shows that it ever gave any directions as to his dealing with the moneys received by him as secretary other than that embodied in the by-laws of the corporation which were in evidence and are embodied in the statement. By these by-laws it was distinctly provided as to the moneys, that the secretary should "receive all moneys due the association, giving his receipt for the same," and pay over all such moneys "to the treasurer, tak-

ing his receipt therefor." This did not make him the custodian of the moneys. Any inference to the contrary is not justified by any evidence in the case. The impression which was attempted to be made by James in his testimony that any such direction was given other than that above stated, is based upon a remark of a director of the board, at one of its meetings, or on something said or done by the president. Conceding that the corporation could be bound in this way, the remarks stated by him and the acts of the president did not justify any inference that the board had ever attempted in any way to give the moneys any other direction than that prescribed by the by-laws above mentioned.

There is no evidence that the safe was furnished James by the association for keeping the money of the association. James himself gives no such testimony. He says: "There was a safe in the office furnished by the plaintiff corporation. The safe belonged to the association. It was a Tilton & McFarland old combination safe. I was required to do the business of the association in that office." He nowhere says that he was required or directed to keep the money in the safe; on the contrary, the evidence, not in conflict with any fact which he states, shows that the board refused to hire a box in the Safe Deposit Building, in which he could deposit the money, and he was told not to keep the money in the safe. He testifies that he felt uneasy at night about the money, and in consequence of this uneasiness called the attention of the board to this safe. The evidence further shows that he was warned of the insecurity of the safe, and instructed by the board to deposit the money with the treasurer. The money stolen was accumulating a month or so before the larceny occurred.

If he was required to keep the money, if this was any part of his duty, the evidence establishes a clear case of negligence. The money was kept in an insecure place, to the knowledge of the secretary, a key to the combination lock of the safe was in the hands of another person not connected in any way with the association, and had been for some time, and the combination was allowed by him to remain unchanged, and the building had no watchman. Under the circumstances, if the duty to keep the money was devolved on him, he would have been justified,

and it would have been his duty to have sought a safe place of deposit, of which many could have been found in his neighborhood. But it was no part of his duty to become the custodian of the moneys of the association, but to pay them over to the treasurer under the by-laws above mentioned. The evidence shows that there was a treasurer, that his office was not more than five or six blocks distant from the office of the association, easily accessible, and thus a custodian was provided by the association, and his assumption of the office of custodian was entirely unnecessary. We see no evidence that any course of business was established by the board by which it should be inferred that the board required him to keep the money until called for by the treasurer. If any course other than that prescribed by the by-laws above referred to was pursued, it was pursued by the secretary of his own head without any direction either express or implied of the board of directors of the association.

It may be remarked here that the evidence in relation to the safety of the money in the safe and his calling the attention of the trustees to it, and the way of doing business while he was secretary in regard to the treasurer calling on him for the money, instead of his taking it to the treasurer, was objected to by the plaintiff on the ground substantially that it altered the contract between the parties; the objection was overruled and exceptions reserved. The objections should have been sustained, and the evidence ruled out. There was error in admitting it.

As this cause must go back for a new trial, the true intent of the contract of the parties should be defined for the direction of the court below on such new trial. The question has been fully argued orally and in the briefs of counsel, and it should be decided, that the litigation may sooner come to an end, thus saving time and expense to the parties.

The engagement of the defendant James, as shown by the bond, was in all respects "fully, faithfully, well and truly, to perform all the duties of his said trust according to the constitution, by-laws, rules, and regulations" of the association; and as we have stated above, his duty as to the moneys was to receive all the moneys of the association, giving his receipt for

them and pay them over to the treasurer, taking his receipt therefor. This is the proper meaning of the bond in regard to the moneys. He was no custodian or bailee of the moneys further than as set forth above. He was such bailee for such time as was requisite in the use of due and proper diligence under the circumstances to get the money to the treasurer and pay it over to him. James was a paid officer, receiving a salary of one hundred dollars a month, and his engagement as to diligence in the brief period that the money should remain in his possession was that of a good and trustworthy business man in attending to his own affairs. He engages to use this diligence in keeping the money and paying it over. The degree of diligence to be employed must have regard to the circumstances, of course.

In the case before us the moneys lost were allowed to accumulate for more than a month. It was the secretary's duty to pay over within a reasonable time. His diligence should have been spurred by the fact that this treasurer was the officially appointed custodian of the moneys, and he (the secretary) was not. Under the circumstances before us in this case, he was bound to pay over in our opinion on the day he received the money if practicable, at furthest on the day after he received it. This he did not do, but allowed the money to accumulate and it was stolen. This was a breach of his engagement under the bond, and rendered him and the other defendants liable. It may be that if, while keeping the money during the brief time he was allowed to keep it, and exercising proper care in keeping it, he had lost it by robbery accompanied by violence which overcame him, or if, while taking the money in the exercise of due and proper care to the treasurer, he was violently robbed of it, against his will and consent, he might be excused. Such was the case of *Walker* v. *British Guarantee Association*, 18 Q. B. 277, which was an action by the trustees of a building society under an act of parliament, against the sureties of one Jones the treasurer of the society, on a covenant whereby it was stipulated that Jones would faithfully discharge the duties of treasurer, duly obey the directions of the trustees in relation to such duty, and punctually account to the trustees for all moneys, etc., received by him as treasurer. One of the directions

of the society in regard to the treasurer's duties was that he should pay over the moneys to the bankers of the society within a given time. The breach assigned was that Jones did not pay over the money to the bankers or at all. The defendants pleaded four pleas. The fourth plea, which was the one on which the case turned and was decided, was that Jones had received the money, and before the time that he ought to have paid or could have paid it to the bankers of the society, he was, without any act or default or negligence or want of due and proper care on his part, robbed by violence of the money, by which he was prevented from paying. There was a verdict for the plaintiffs on three of the pleas, and on the fourth verdict passed for the defendant. There was a motion for judgment for plaintiffs *non obstante veredicto*, which brought up the sufficiency of the plea. The court denied the motion, and per Campbell, C. J., said: "The plea avers that, after he received the moneys, and before the time when he ought to have paid, or could have paid, the same to the bankers, he, without any default or negligence or want of due care on his part, was robbed by violence of the whole of the said moneys, by the same being feloniously and violently stolen and carried way from his person; and thereby he was unavoidably, and without any act or default of his, prevented from paying the said moneys to the bankers of the society. This plea (found to be true) alleges a loss of the moneys by *irresistible violence;* and the general doctrine is not denied, that, if the subject-matter bailed be lost by *vis major*, which we translate *irresistible violence*, the bailee is discharged."

The defense was here sustained on account of the diligence of the treasurer. He was doing his best to comply with his engagement and was prevented by the *vis major*. If he had been dilatory in taking the money to the bankers, it cannot. be supposed that the court would have sustained his defense.

There is here nothing like robbery nor violence, nor inevitable accident, nor *vis major*, to excuse defendant, but a case where the money has been lost by the want of care and prudence on the part of James, which his contract bound him to use, and he and his sureties are liable. In the case of the act of God, or inevitable accident, or *casus* (as the civilians call the act of God

or inevitable accident), (Wharton on Negligence, §§ 114, 115, 116, 117, etc.), or *vis major*, the defendant is not excused when the injury or damage might have been avoided by the exercise of due care and prudence on the part of defendant as is illustrated in many cases. (See *Polack* v. *Pioche*, 35 Cal. 423; *Chidester* v. *Consol. Ditch Co.* 59 Cal. 202, 203; *Holladay* v. *Kennard*, 12 Wall. 254, case of common carrier; and *City of Philadelphia* v. *Gilmartin*, 71 Pa. St. 140; Wharton on Negligence, § 123.)

Judgment and order reversed, and cause remanded for a new trial.

Myrick, J., and Sharpstein, J., concurred.