GEORGE S. TILLINGHAST, as County Treasurer of the County of Madison, Respondent, *v.* J. HERMAN MERRILL, Supervisor of the Town of Stockbridge, and Others, Appellants.

*Bond given under chapter 555 of the Laws of 1864 — a deposit of school moneys with bankers who subsequently fail is no defense to an action for their non-payment.*

The fact that the supervisor of a town in good faith deposited as a general deposit the school moneys received by him with a reputable firm of individual bankers, believed to be solvent, and that thereafter such firm failed and such moneys were lost, is not a defense to an action brought upon the bond of such supervisor given pursuant to the provisions of chapter 555 of the Laws of 1864. (MARTIN, J., dissenting.)

APPEAL by the defendants, J. Herman Merrill, supervisor of the town of Stockbridge, and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Madison on the 10th day of July, 1893, upon the decision of the court rendered after a trial at the Madison Circuit.

*Henry P. Coman,* for the appellants.

*John E. Smith* and *Joseph Mason,* for the respondent.

HARDIN, P. J.:

Under chapter 555 of the Laws of 1864 it is made the duty of the school commissioners in each county to apportion the public money and prepare a certificate thereof to be delivered to the supervisor, and to deposit a copy in the office of the respective town clerks, and section 30 of the act provides that the moneys so apportioned to the towns shall be paid to the respective supervisors immediately upon their compliance with the requirements of section 31, title 3, article 3 of the act. Section 31 provides as follows: " Immediately on receiving the commissioners' certificate of apportionment, the county treas-

urer shall require of each supervisor, and each supervisor shall give to the treasurer in behalf of the town, his bond with two or more sufficient sureties approved by the treasurer, in the penalty of at least double the amount of the school moneys set apart or apportioned to the town, and of any such moneys unaccounted for by his predecessor, *conditioned for the faithful disbursement, safe-keeping and accounting for such moneys,* and of all other school moneys that may come into his hands from any other source. If the condition shall be broken, the county treasurer shall sue the bond in his own name, in behalf of the town, and the money recovered shall be paid over to the successor  *  *  *  having first given security as aforesaid." It is provided in section 32 that the "refusal of a supervisor to give such security shall be a misdemeanor ;  *  *  *"  In section 3 of title 4 of the act it is provided as follows : "A supervisor who shall embezzle or apply to his own private use any money or security received by him under any provision of this act, including the two preceding sections of this title, shall be guilty of a misdemeanor ; *  *  *"  Pursuant to such legislation the appellant Merrill, as principal, and the other appellants, as sureties, executed and delivered the bond prescribed by statute, which contained the following condition, to wit: "That if the above-bounden J. Herman Merrill, supervisor, shall safely keep, faithfully disburse and justly account for all the school moneys which have or shall come into his hands, apportioned and paid from the State treasury, and all other school moneys that have or may come into his hands from any other source, then this obligation to be void, otherwise to remain in full force and virtue." Upon that bond this action is brought, and the complaint alleges a breach of the condition of the bond in that the supervisor neglected and failed to safely keep or faithfully disburse and account for the school moneys placed in his hands, and that he was delinquent in the sum of $951.30 ; and that he had neglected and refused to faithfully disburse or account for that sum according to the tenor of his bond. The answer interposed in this case alleges that the school moneys, after their receipt by the supervisor, were by him deposited in the banking house of E. C. Stark & Co. (individual bankers) in the village of Oneida, to his credit as supervisor of the town of Stockbridge, and that at the time of the deposit thereof in March the said E. C. Stark & Co. were in good credit

and by the supervisor believed to be solvent, having a reputation of being a solvent and prosperous company. It is further alleged that on the 14th day of July, while the sum of $951.30 was so deposited in said banking house, Stark & Co. failed and made a general assignment for the benefit of their creditors, whereby the said money was lost without any fault or negligence on the part of the said supervisor. The answer also alleged that he acted in good faith, without any negligence, in making such deposit. From the findings made by the trial court it appears that orders were drawn upon the supervisor by the trustees of the school districts of the town directing him to pay and disburse out of the school moneys in his hands applicable to the payment of teachers' wages, several sums specified in said orders, and that the supervisor neglected and refused to pay said orders upon the same being presented to him, and neglected and refused to disburse the school moneys in his hands applicable to the payment of teachers' wages, and to disburse the library money upon written orders of a majority of the trustees of school districts of the said town, "and that payment of the same was duly demanded of the defendant Merrill, and that he declined and refused to pay the same upon the grounds that he had no money applicable to their payment; that such orders were presented to said Merrill after the failure of the banking house of E. C. Stark & Co." It is also found that he deposited the moneys paid to him "to his credit as supervisor of the town of Stockbridge in the bank or banking house of E. C. Stark & Co., in the village of Oneida, Madison county, N. Y., which bank or banking house was composed of E. C. Stark and R. M. Bingham, who were then engaged in carrying on an unincorporated private bank at said village of Oneida; that at the time when said deposits were made the said E. C. Stark & Co. were solvent; that at the time when said deposits were made and down to the time of their failure and assignment the said E. C. Stark & Co. were doing a general banking business usual to private banks, but were not incorporated either under National or State laws." It is also found that "E. C. Stark & Co. were in good standing and credit and doing a large and apparently prosperous business, and had a large number of regular depositors and a large amount of money constantly on deposit in their said bank, and many good business men of the village of Oneida and of said town of Stockbridge were

depositors in said bank at the time when said deposit was made and at the time of their failure; that at the time when said deposits were made the village of Oneida was the most convenient and accessible place for the defendant Merrill to do banking business." It is also found "that in making such deposits of said money in said bank of E. C. Stark & Co. the defendant Merrill acted in good faith;" also, " that in making such deposits of said moneys in the said bank of E. C. Stark & Co. the defendant Merrill was not negligent, and was not guilty of any personal negligence as to said moneys or the care and management thereof, or as to his said office and the performance of the duties thereof." It also appears that when the said deposits were made, and for several years prior thereto, there were in the village ·of Oneida two National banks incorporated under the United States Banking Law, and a savings bank incorporated under the laws of the State of New York, which were solvent and in good standing and credit. It is also found that at the time when the said deposits were made with E. C. Stark & Co. they were and for a long time "had been in the habit of receiving special deposits of funds, moneys and valuable papers for safe-keeping." It is further found "that on the 14th day of July, 1891, the said E. C. Stark & Co. failed and made a general assignment for the benefit of their creditors; that at the time of their failure and of the making of said assignment by them there was thus on deposit with the said E. C. Stark & Co. the sum of $951.30 of the said school moneys which the said defendant Merrill had thus deposited with the said E. C. Stark & Co.; that by reason of the said assignment and insolvency of E. C. Stark & Co. the said sum of $951.30 became lost. That the defendants claim that by reason of the said assignment and insolvency of the said E. C. Stark & Co., the said sum of $951.30 has become lost. That the said assignment is still in force and said assignee has not had any settlement of his accounts, and down to the time of the commencement of this action had not made any distribution of the assets among the creditors." It is found as a conclusion of law that the supervisor "became the debtor of the town in the said sum of $2,150.95, thus received by him. That he became absolutely responsible for these moneys, as the debtor of the town, and that it is no defense that the moneys were lost without any fault, want of

care or omission of duty on his part." It is also found as a matter of law, viz.: "That the loss of the said sum of $951.30 of the said school moneys thus received by the said defendant Merrill, by reason of the insolvency of E. C. Stark & Co., with whom the defendant Merrill deposited the same, as a general deposit, is no defense to this action." Also, "that this money was within his control, placed there by force of the statute, and if he saw fit to intrust it to the care of these insolvent bankers, he did so at his peril. And it was a breach of his bond, which required him to safely keep it and disburse it." Also, "that said moneys so deposited in said bank of E. C. Stark & Co. were lost without any personal fault or negligence of the defendant Merrill," and a judgment was ordered for the sum of $951.30 and interest from the commencement of the action in favor of the plaintiff and against the defendants. At the instance of the defendants the court found "that there was duly presented to the defendant Merrill, as such supervisor (after the failure of E. C. Stark & Co.), orders in due form as required by law, drawn by trustees of school districts of said town of Stockbridge, in favor of qualified teachers, upon said Merrill, as supervisor, to the amount of $200, and payment of the same was duly demanded of the defendant Merrill; and he declined and refused to pay the same, upon the ground that he had no money applicable to their payment." It was also found at the instance of the defendants "that in making such deposit of said money the defendant Merrill acted in good faith." It was also found that "Stark & Co. were and for a long time had been in the habit of receiving special deposits of funds, moneys and valuable papers for safe-keeping." Defendants took exceptions to the findings of fact and conclusions of law made and to several refusals to find in accordance with the requests made by the defendants. Considering the evidence in connection with the allegations of the pleadings upon the subject of the moneys, we are of the opinion that the trial court was warranted in finding that there was a breach of the bond of the defendants before the commencement of this action, and that the defendants had failed to comply with the terms of the bond executed by them. (*Supervisors* v. *Van Campen,* 3 Wend. 49; *Supervisors* v. *Bristol,* 99 N. Y. 317; *State* v. *Nevin,* 19 Nev. 162.) In accordance with section 31 of the school law requiring the bond to be "conditioned

for the faithful disbursement, safe-keeping and accounting for such moneys, and of all other school moneys that may come into his hands from any other source," it became the duty of the supervisor to honor the orders that were drawn upon him by the trustees, which duty he failed to perform in declining to accept and pay the orders drawn in pursuance of the provisions of the statute.

This brings us to the consideration of the principal question involved in this case, which arises in connection with the fact alleged and proved and found, to wit, that after the execution of the bond, and after receiving the public moneys, instead of keeping the same on hand in the actual, personal possession of the supervisor, instead of keeping them in specie, and instead of making a special deposit in incorporated banks or in the banking house of Stark & Co., he made a general deposit of the moneys with Stark & Co., individual bankers, who were believed by him at the time of the deposit to be solvent (but who in fact were insolvent), and that subsequent to such deposit Stark & Co. failed, made an assignment, and became unable to return the deposit of moneys so made by the supervisor to him, or to furnish him with means wherewith to honor the orders drawn upon him.

Appellants rely upon *Supervisors* v. *Dorr* (25 Wend. 440; S. C. affd., 7 Hill, 583). In that case Dorr was county treasurer, and had given a bond for the faithful execution of the duties of the office, and for the payment, according to law, of all moneys that should come into his hands as such treasurer, and the defense interposed to an action upon the bond was that the " identical moneys received by him as county treasurer at his office in the city of Albany, and before he was requested to pay out the same was * * * feloniously stolen from his office, without any negligence, want of due care, or other blame or fault whatever on his part ;" and upon a demurrer to the plea it was insisted that the treasurer did not, upon the receipt of the money, become an absolute debtor to the county for the amount received, but that he held it as the agent of the county, and in the respect mentioned the case differs from the one before us ; and in a note to the case found in 7 Hill, it is said " the law seems to have been since settled, and properly, it is believed, directly the other way, by the case of *Muzzy, Supervisor,* v. *Shattuck* (1 Den. 233), decided by the Supreme Court in May, 1845."

In *Muzzy* v. *Shattuck* (*supra*) the action was upon a collector's bond of the town of Hamilton, conditioned to faithfully execute the duties of his office of collector, and in answer to an action upon it it was alleged that " after he had collected the said moneys upon the said warrant issued by the said board of supervisors, etc., and before the return day of the said warrant, at the dwelling house of the said defendant in the town of Hamilton aforesaid, the said moneys in the said declaration mentioned as the amount to be paid over to the said treasurer of the county of Madison, were feloniously stolen, taken and carried away from the said dwelling of the said defendant by some person or persons unknown to the said defendant, who burglariously broke into the said dwelling house of the said defendant, in the night-time for that purpose; and that the said moneys were so stolen, taken and carried away feloniously as aforesaid, without any fault, want of care or omission of duty on the part of the said defendant;" and, upon a demurrer to the plea, it was held that " it is no defense that the collector had collected the money, and that the same had been stolen from his dwelling house, without any fault, want of care or omission of duty on his part." The decision was affirmed by the Court for the Correction of Errors. And in the course of the opinion delivered by JEWETT, J., in the Supreme Court, he says : " Nothing short of a credit or payment, in my judgment, amounts to the performance of the condition of the bond. * * * The statute imposes a definite liability on the collector and his sureties for the omission to collect and pay, and whether that omission is the result of misfeasance or neglect, unavoidable accident or felony committed by another, I do not think it furnishes any defense to the action." Besides the note found in 7 Hill, to the effect that the case of *Supervisors* v. *Dorr* was overruled by *Muzzy* v. *Shattuck*, it appears in the opinion of STRONG, J., in *Boyden* v. *United States* (13 Wall. 23), that upon an inspection of the two cases he was of the opinion that *Supervisors* v. *Dorr* " is no longer authority even in the State of New York," and he adds: " *Muzzy, Supervisor*, v. *Shattuck*, subsequently decided and affirmed unanimously in the Court of Appeals, is utterly irreconcilable with it, and it has settled the law otherwise in that State." However, in *Nash* v. *Faulkner* (107 N. Y. 487), after referring to the decisions in the Federal courts, and to the decisions in our State courts, it was said : " In view of the

decisions of the Federal and State courts above cited, and the fact that that decision has been much questioned, and has by some been supposed to have been overruled by the decision in *Muzzy* v. *Shattuck*, it should probably not be regarded as binding authority in this State, and the question therein decided may yet be regarded as an open one.    When a case arises against an officer for not paying over and accounting for public moneys, intrusted to him in his official capacity, it will be necessary to determine whether his liability, in the absence of statutes specially defining it, shall be governed by the common law, or whether the broad and more rigid rule of responsibility laid down in the cases above referred to shall be enforced in this State.    It is not necessary to decide that question in this case, because the money here received by the surrogate was not public money, but the money of a private estate or of private individuals." Considering the force of the statute to which reference has been made, and the long line of authorities bearing on the pivotal question involved here, we may properly sustain the decision of the trial court overruling the defense.    (*Muzzy* v. *Shattuck*, 1 Den. 233 ; *United States* v. *Prescott*, 3 How. [U. S.] 578 ; *Boyden* v. *United States*, 13 Wall. 21 ; *Board of Education of Pine Island* v. *Jewell*, 44 Minn. 427 ; *District Township of Taylor* v. *Morton*, 37 Iowa, 550 ; *Thompson* v. *Board of Trustees of Township No.* 16, 30 Ill. 99 ; *Halbert* v. *Board of Commissioners of Martin County*, 22 Ind. 125 ; *Commissioners of Hennepen County* v. *Jones*, 18 Minn. 199 ; *Commissioners of Jefferson County* v. *Lineberger*, 3 Mont. 231 ; *Morbeck* v. *State ex rel. Jackson Township*, 28 Ind. 86 ; *Rock* v. *Stinger*, 36 id. 346 ; *District Township of Union* v. *Smith*, 36 Iowa, 9 ; *Hancock* v. *Hazzard*, 12 Cush. [Mass.] 112 ; *Board of Commissioners of Redwood County* v. *Tower*, 28 Minn. 45 ; *State of Nevada* v. *Nevin*, 19 Nev. 162 ; *State of Ohio* v. *Harper*, 6 Ohio, 607 ; *Inhabitants of New Providence* v. *McEachron*, 33 N. J. L. 339 ; *State ex rel. Board of Commissioners of Bladen County* v. *Clarke*, 73 N. Y. 255 ; *Commonwealth* v. *Comly*, 3 Penn. 372.)

It is quite obvious that the point decided in *Nash* v. *Faulkner* (*supra*) is not controlling in this case, and in pointing out the distinction between an officer holding public moneys in virtue of public statutes, and an officer who held moneys like a surrogate for the benefit of individuals, the court said of the latter, to wit, the surro-

gate : "He is merely the trustee or agent of the private parties interested in the money, and no greater or higher responsibility should be imposed upon him than would be imposed upon any agent or trustee." Inasmuch as the trial court found the questions of fact relating to the alleged negligence of the defendants and their good faith favorable to them to quite as great an extent as a jury would have been warranted in finding upon the evidence produced, we think the appellants cannot complain as to the mode of trial adopted at the Circuit. The foregoing views lead to an affirmance of the judgment.

MERWIN, J., concurred.

MARTIN, J. (dissenting) :

It seems to me that the weight of authority is to the effect that, in the absence of any statute enlarging it, the responsibility of a public officer is measured by the common-law liability of a bailee for hire, other than common carriers and innkeepers, and that while such an officer is bound to act in good faith and exercise reasonable diligence in the discharge of his duties, he is not responsible for the loss of money coming into his hands which occurred without fault on his part. (*Supervisors* v. *Dorr*, 25 Wend. 440 ; *People ex rel. Nash* v. *Faulkner*, 107 N. Y. 477 ; *United States* v. *Thomas*, 15 Wall. [U. S.] 337 ; *Peck* v. *James*, 3 Head [Tenn.], 75 ; *Cumberland* v. *Pennell*, 69 Maine, 357.)

I do not regard the cases of *Muzzy* v. *Shattuck* (1 Den. 233) ; *Looney* v. *Hughes* (26 N. Y. 514) ; *Fake* v. *Whipple* (39 id. 394), and *Bradley* v. *Ward* (58 id. 401) as in conflict with the doctrine of the foregoing authorities. The latter cases were all actions upon a collector's bond, and it was held that under and by virtue of the express provisions of the statute relating to the collection of taxes, a collector upon receipt of his warrant became a debtor to the county in the sum which he is authorized to collect, and that such indebtedness could be discharged only by producing to the treasurer a duplicate receipt of the officer to whom the collector was directed to pay the moneys collected, or by making his affidavit that certain taxes remain unpaid, and that, upon diligent inquiry, he has been unable to discover any property belonging to the person charged with such taxes, whereon he could levy the same.

It is quite manifest, I think, that the cases first cited are not overruled by or in conflict with the latter ones, and that the question involved in this case is not affected by the doctrine of those decisions. While it has been said that the case of *Supervisors* v. *Dorr* was overruled by the decision in *Muzzy* v. *Shattuck*, it does not seem to me that that statement is correct. There was no mention of the former case in the opinion in the latter, and one at least of the judges who joined in the decision of the latter case concurred in the opinion of the prior one. I can see no reason why the case of *The Supervisors* v. *Dorr* should not be regarded as an authority upon this question. It is true that it was said in *People ex rel. Nash* v. *Faulkner* that as the decision in the *Dorr* case had been much questioned, and been supposed by some to have been overruled in the *Muzzy* case, it should, probably, not be regarded as binding authority in this State, and that the question therein decided may yet be regarded as an open one. The logic of that suggestion is not quite apparent, as it had already been distinctly stated that there was no conflict between the two decisions ; that the *Muzzy* case did not expressly or by implication overrule the decision in the *Dorr* case, and that the supposition that it had been so overruled was erroneous. Under such circumstances, I cannot perceive any reason for rejecting the *Dorr* case as an authority, nor why it should not be given the weight to which any decision of that court is entitled. I am of the opinion that the decision in the *Dorr* case, if not controlling or binding, should be regarded as some authority upon this question, and when considered in connection with the other cases cited, should be regarded as persuasive authority upon the question of the liability of a public officer for the loss of money which comes into his official custody and is lost without any fault upon his part. I think that, independent of any provision in the bond which enlarges or increases the liability of the officer, a public officer is not responsible for the loss of money which comes into his official custody, occurring without fault on his part.

This leads to the consideration of the question whether the provisions of the bond in suit in any way increased or enlarged the defendant's liability. The condition of the bond was that the defendant should "safely keep, faithfully disburse and justly account for all the school moneys which have or shall come into his

hands, apportioned and paid from the State treasury, and all other school moneys that have or may come into his hands from any other source." This bond does not, I think, in any essential particular differ from that of a county treasurer or of a surrogate, and with regard to the latter, the Court of Appeals in *People ex rel. Nash* v. *Faulkner* (107 N. Y. 489) said: "There is nothing in the phraseology of the bond given by the surrogate which enlarges his statutory liability. It is a bond simply for the faithful performance of his duties, and the faithful application and payment of all moneys that may come into his hands. It imposed upon the surrogate no broader responsibility or liability than the statute. It was simply designed to enforce and secure the faithful discharge of his duties, and any defense which he would have had when called to account for the money which came to his hands is available to his sureties when sued upon the bond." Within the principle of that case and the case of *The Supervisors* v. *Dorr*, I think it should be held that there was nothing in this bond which in any way increased or enlarged the liability or responsibility of the defendants, and that as the trial court has found that the defendant Merrill acted in good faith, and that the moneys were lost without any fault or negligence on his part, the plaintiff was not entitled to recover.

Thus I am led to dissent from the opinion in this case of my brother HARDIN.

Judgment affirmed, with costs.