14  117
15  616
16  529

[No. 1991.  Decided February 27, 1896.]

JAMES C. FAIRCHILD, *Appellant*, v. JOHN B. HEDGES,
*Treasurer of Pierce County, et al., Respondents.*

COUNTY TREASURER — LIABILITY FOR MONEY DEPOSITED IN BANK.

Under the constitution and statutes of this state a county treas-
urer is held strictly accountable for all public funds coming into his
hands, and the exercise by him of ordinary care in the selection of
banks in which to deposit such funds, will not excuse him from
fully accounting for the moneys deposited therein, in case of the
subsequent insolvency of the banks, even if the county has not

provided him with a suitable and safe place in which to keep its funds. (Hoyt, C. J., dissents).

Appeal from Superior Court, Pierce County — Hon. W. H. Pritchard, Judge. Affirmed.

*Snell & Bedford*, for appellant.
*Coiner & Shackleford*, for respondents.

The opinion of the court was delivered by

Gordon, J.—The appellant was for four years prior to January, 1895, the qualified and acting treasurer of Pierce county, and the respondent Hedges succeeded him as such treasurer. The respondents Holmes, Rogers and Bartholomew constitute the board of commissioners, and the respondent Gloyd is county auditor of said county. From the record it appears that during the terms of office as such treasurer the appellant deposited sums of money coming into his hands as such treasurer in various banks, some of which banks thereafter failed, and this proceeding was instituted by the appellant to compel the respondents to accept in settlement of appellant's account as treasurer certain receivers' certificates of insolvent banks. The petition asserts that the deposits were made with the knowledge of the respondents and in accordance with his business custom, that neither the county of Pierce, nor the board of county commissioners of said county provided him with any safe place for keeping the funds, and that the safest and surest manner of keeping them was to make a deposit of them in reliable banks of good standing in the community, that the several banks selected by him as places of deposit were of high standing and repute, etc. The lower court sustained respondents' motion to quash the affidavit upon which the application for a writ of man-

date was based, and, the relator electing to stand thereon, judgment of dismissal was rendered, from which he appeals. For a better understanding of the nature of the controversy we quote the following from the opening statement contained in appellant's brief, viz.:

"  .  .  .  the question at issue in this action is narrowed by agreement of parties to the consideration of the one question, to-wit: 'Is the county treasurer of Pierce county, Washington, liable personally or upon his bond for money deposited in a bank which afterwards becomes insolvent, in a case where there is no charge of negligence or want of care in any degree against the treasurer; and where it is further admitted that the county has not provided a suitable and safe place in which to deposit the amount of money which may come into the treasurer's hands?'"

Appellant's contentions are: First, that the treasurer is not the debtor or insurer of the money that comes into his hands, but only the bailee for hire or trustee of an express trust, who was only responsible for the exercise of good faith and reasonable skill and diligence in the discharge of his trust: and second, that there is no statutory or constitutional inhibition against depositing such funds in the banks for safe keeping, that under the circumstances it was his duty to so deposit said funds, and that he would be liable for negligence only in selecting such depositories.

Sec. 5, art. 11, of the constitution of the state requires that

"The legislature  .  .  .  shall provide for the strict accountability of such officers [referring to the county officers] for all fees which may be collected by them, and for all public moneys which may be paid to them, *or officially come into their possession.*"

The statute makes it the duty of the county treas-

urer to receive all moneys due and accruing to the county and disburse the same in the manner provided by law, and requires him, before entering upon the duties of his office to give a bond to the county, conditioned among other things that

"All moneys received by him for the use of the county shall be paid as the commissioners shall from time to time direct, except where special provision is made by law for the payment of such moneys, by order of any court, or otherwise, and for the faithful discharge of his duties." Gen. Stat., § 211.

An examination of all the authorities has satisfied us that while such officers are bailees " they are special bailees subject to special obligations " and that " it is evident that the ordinary law of bailment cannot be invoked to determine the degree of their responsibility." *United States v. Thomas*, 15 Wall. 337.

" His liability is to be measured by his bond and that binds him to pay the money." *Boyden v. United States*, 13 Wall. 17.

On this branch of the case, this court in *Marx v. Parker*, 9 Wash. 473 (37 Pac. 675), after reviewing the authorities bearing upon the proposition, said:

" It seems to us that every one of the earlier cases cited, where the expression was used that such and such an officer was not a bailee, or a mere bailee, or was a debtor, must be regarded from the standpoint of the court and the particular case. They were one and all cases where suit had been brought upon the bond of the officer, and he was attempting to excuse his default because he had lost the money by robbery, or from some other cause over which he claimed to have had no control. *But in every such case it was held that his liability was absolute,* and the true reason, under *United States v. Thomas, supra,* must be, not that he was any the less a bailee, but that the statute imposed upon him a measure of duty larger than that found in the common law."

We take it that it is fundamental in the law of bailments that the amount of care which the bailee is required to take of the goods or property entrusted to him may be expressly fixed by the contract, and that it is only in the absence of an express agreement that the law presumes it to have been the intention of the parties that a bailee for hire (other than common carriers and the like) is required to exercise only ordinary care, prudence and caution in the custody and control of the property with which he is entrusted. In the well considered case of *Board of Education v. Jewell*, 44 Minn. 427 (20 Am. St. Rep. 586, 46 N. W. 914), the court say:

"There is some conflict in the decisions as to the responsibility of public officers and their sureties for the loss of public moneys without negligence or fault on the part of the officers. While in some cases the rule of responsibility of bailees for hire has been applied, exonerating officers who have been found guiltless of negligence, this measure of responsibility is not generally accepted. The great weight of authority in this country will sustain the general propositions, with respect to the liability of such officers and their sureties for the loss of public moneys, that where the statute, in direct terms or from its general tenor, imposes the duty to pay over public moneys received and held as such, and no condition limiting that obligation is discoverable in the statute, the obligation thus imposed upon and assumed by the officer will be deemed to be absolute, and the plea that the money has been stolen or lost without his fault does not constitute a defense to an action for its recovery; that the rule of the responsibility of bailees for hire is not appliable in such cases; that where the condition of a bond is that the officer will faithfully discharge the duties of the office, and where the statute, as before stated, imposes the duty of payment or accountability for the money, without condition, the obligors in the bond are subject to the same high degree of responsi-

bility; and that the reasons upon which these propositions rest are to be found both in the unqualified terms of the contract and in considerations of public policy."

In *Wilson v. Wichita County*, 67 Tex. 647 (4 S. W. 68), the court say:

"It is too well settled to require discussion that an officer who is custodian of public money does not occupy the relation of a mere bailee for hire, who is responsible only for such care of the money as a prudent man would take of his own. He is bound to account for and pay over the public money, . . ."

In *Rose v. Douglass Tp.*, 52 Kan. 451 (34 Pac. 1046, 39 Am. St. Rep. 354) the court say:

"By accepting the office of township treasurer,—McNabb assumed the duty of receiving and safely keeping the money of the township, and paying it out according to law. He or his sureties are bound to make good any deficiency which might occur in the funds which came under his charge, whether they were lost in the bank or otherwise."

In *Griffin v. Board of Commissioners*, 71 Miss. 767 (15 South. 107), it is said:

"The idea that the tax collector may make a general deposit of public money in bank, and thereby absolve himself from liability to pay over as he is by law required to do, is so utterly unreasonable as to need no combating. Like all others depositing funds in bank, the tax collector took the risks involved in so doing. The state looks to its officer, and the officer must look to his unreliable or unfaithful banker."

In *Nason v. Director of Poor for Erie County*, 126 Pa. St. 445 (17 Atl. 616) the court speaking through Chief Justice PAXSON, say:

"The failure of the bank in which the defendant deposited the money is no defense. A receiver of public moneys, who has given a bond for its safe keep-

ing, is not discharged from liability therefor by the failure of his banker."

In *Ward v. School District No. 15*, 10 Neb. 293 (35 Am. Rep. 477, 4 N. W. 1001), the court say:

"It was Ward's duty, under the law, to keep the money securely . . . The money was within his control, placed there by force of the statute, and if he saw fit to entrust it to the care of another, he did so at his peril."

In *District Township of Taylor v. Morton*, 37 Iowa, 550, the defendant as township treasurer had given a bond conditioned (pursuant to the statute) that—

"If the said M., as treasurer, shall faithfully and impartially discharge the duties of said office as required by law, then this obligation shall be null, etc."

It was held that the defendant was absolutely liable for all moneys coming into his hands, and that he could not plead as a defense that the money was without his fault or negligence stolen from him, the court saying:

"These rules are applicable to all contracts, and the public interests demand that, at this day, when public funds in such vast amounts are committed to the custody of such an immense number of officers, they should not be relaxed when applied to official bonds. A denial of their application in such cases would serve as an invitation to delinquencies which are already so frequent as to cause alarm."

In *Commonwealth v. Comly*, 3 Pa. St. 372, Mr. Chief Justice GIBSON says:

"The keepers of the public moneys, or their sponsors, are to be held strictly to the contract, for if they were to be let off on shallow pretences, delinquencies, which are fearfully frequent already, would be incessant."

In addition to the foregoing, the following cases are

to the same effect: *Halbert v. State, ex rel. Board of Commissioners of Martin Co.*, 22 Ind. 125; *State, ex rel. Mississippi County, v. Moore*, 74 Mo. 413; *State v. Harper*, 6 Ohio St. 607 (67 Am. Dec. 363); *Inhabitants of New Providence v. McEachron*, 33 N. J. Law, 339; *State v. Clarke*, 73 N. C. 255; *Commissioners of Jefferson Co. v. Lineberger*, 3 Mont. 231; *Thompson v. Board of Trustees*, 30 Ill. 99; *McKinney v. Robinson*, 84 Tex. 489 (19 S. W. 699); *Tillinghast v. Merrill*, 28 N. Y. Supp. 1089; *Baily v. Commonwealth*, 10 Atl. (Pa.) 764.

We think that by the great weight of authority upon the question an officer such as a county treasurer under our law is held to the rule of strict accountability. As is said in *Thompson v. Board of Trustees, supra*,

"They know well, on assuming their positions, the hazards to which they are exposed, and they voluntarily assume the risks, and are paid for so doing."

And if

"It appears to be a harsh measure of justice to hold that the treasurer and his sureties are liable on his official bond for the money deposited under the circumstances disclosed in the affidavit of defense and subsequently lost without his fault or negligence, *it is impossible to reach any other conclusion without ignoring the authority of well considered cases.*" *Baily v. Commonwealth, supra.*

We have examined all the cases cited in the able brief of the appellant bearing upon this proposition, but are unable to perceive that they are in conflict with the doctrine above laid down. A single case need only be referred to, *In re Law's Estate*, 144 Pa. St. 449 (22 Atl. 831). It was there held that the guardian who deposited the moneys of his ward in a bank believed by him to be solvent, was not liable for the

funds so deposited upon the failure of the bank. We think that the distinction is very clear between the liability and duty of one receiving moneys as a guardian for the benefit of a private individual, and the liability imposed by statute and by express undertaking upon a public officer as in the case at bar. As to the former,

"He is merely the trustee or agent of the private parties interested in the money, and no greater or higher responsibility should be imposed upon him than would be imposed upon any agent or trustee." *People v. Faulkner*, 107 N. Y. 488 (14 N. E. 415).

The loss in this case was not occasioned by the act of God or a public enemy and we are not called upon to decide whether under the circumstances attending such a loss the officer would be exempt from liability. This conclusion necessarily leads to an affirmance of the judgment entered below and renders it unnecessary to decide whether a county treasurer may lawfully deposit the funds of his county in a bank or banks.

ANDERS, SCOTT and DUNBAR, JJ., concur.

HOYT, C. J. (*dissenting*). I am unable to agree with the conclusions of the majority stated in the foregoing opinion. I think that money coming into the hands of a county treasurer as such belongs to the county and not to the treasurer; that the relation of debtor and creditor is not created. He holds it as trustee for the county and is only responsible for the exercise of such care in its safe keeping as is required of a trustee for hire. Under the statute and the obligation which he gives, he is bound to properly discharge the duties of the office, one of which is to exercise due care in safely keeping the funds of the county. But it is a

strained construction of such statute and obligation which makes him the guarantor of such safe keeping. If it is a part of his duty to produce the money regardless of contingencies, he should be allowed to do what he pleases with it until called upon to so produce it. It is unfair and illogical to say that he is personally responsible for the safe keeping of the money and at the same time must make only such disposition of it as may be prescribed by the one for whom he holds it.

The cases which have held public officers to be guarantors of the safety of funds coming into their hands are mostly from federal courts and have been largely induced by the peculiar language of the federal statutes. To hold that the officer cannot make such disposition of the funds as he thinks proper and yet must be responsible for their safe keeping, is so illogical and fraught with such hardship upon the officer that I am not willing to follow the cases which have so held. If the relation of debtor and creditor was created by the receipt of the money by the officer so that he could dispose of it as he pleased, there would be reason in holding him responsible for its safe keeping; but this would be against public policy.

In my opinion all that our statute requires of a county treasurer is either that he should produce the money coming into his hands when required by law, or that he should show that he had exercised the care required of a trustee for hire, and that it had been lost without fault on his part.

Such has been the holding of the courts under statutes of the same substance as ours, where the bond required was to the same effect. See *Cumberland v. Pennell*, 69 Me. 357; *Supervisors v. Dorr*, 25 Wend. 440; *York Co. v. Watson*, 15 S. C. 1 (40 Am. Rep. 675);

*Wilson v. People,* 19 Colo. 199 (41 Am. St. Rep. 243, 34 Pac. 944); *State v. McFetridge,* 84 Wis. 473 (54 N. W. 1); *State v. Houston,* 78 Ala. 576 (56 Am. Rep. 59).

These cases are directly in point and many others could be cited; also a large number which, though not deciding the exact question here involved, in principle sustain the contentions of appellant. See *United States v. Thomas,* 15 Wall. 337; *People v. Faulkner,* 107 N. Y. 477 (14 N. E. 415); *McClure v. Board of Comr's,* 19 Colo. 122 (34 Pac. 763); *Bridges v. Perry,* 13 Vt. 262; *Odd Fellows Assn. v. James,* 63 Cal. 598 (49 Am. Rep. 107).

See, also, Story on Bailments, 620, and Perry on Trusts, § 441.

Did the appellant exercise such care when he deposited the funds in question in due course of business in a bank which after diligent inquiry he had reason to believe and did believe to be solvent? If what we have said as to the degree of care required of him is the proper measure of his liability, he was discharging his duty as to the fund when he was making such disposition of it as a prudent man would of his own, and since it is a fact of which we must take judicial notice that the most prudent men keep their funds on deposit in such banks, it must follow that when appellant did this with the funds of the county he was exercising due care in reference thereto, unless he was prohibited by the statute from thus disposing of them. It may be fairly deduced from the statute that the county treasurer is prohibited from loaning the funds of the county, and if the depositing of the same in a bank is a loaning within the meaning of these statutes, the appellant had no right so to deposit the funds in question. That the depositing of money in bank is for certain purposes a loaning of it to the

bank so that the relation of debtor and creditor exists in regard thereto is beyond question, but in my opinion to so deposit money is not to loan it within the meaning of the statute as to the disposition of public funds. The loaning of money in the ordinary sense is a transaction by which, at the instance of the borrower, one parts with his funds for a consideration. A deposit in bank is of a different nature. Money is placed there primarily for other purposes than to secure interest thereon. The primary object is to secure its safe keeping and availability whenever required, and for that reason it is not a loaning within the ordinary acceptation of the term, and hence not within the provisions of the statutes. And so the courts have held. See *State v. McFetridge, supra,* and the other cases cited.

In my opinion the appellant was justified in depositing the money of the county in a bank, and if in the selection of such bank he used such care as a prudent person would in dealing with his own funds and only so deposited it in banks which he had reason to believe and did believe, to be solvent and safe, he should not be held responsible for loss occurring on account of such deposit. In my opinion the judgment should be reversed.