### STATE, USE &C., v. WATSON.

1. CLERK CIRCUIT COURT: *Liability of himself and sureties for money in his custody.*

When money in the control of the Circuit Court, is, by its order, placed in the custody of the clerk, he holds it in his official capacity and may be punished for contempt for failing to pay it over as ordered by the court, and deprived of his office for malfeasance; and he and his sureties will be liable for it on his official bond to the party entitled to it.

State, use, etc., v. Watson.

APPEAL from *Jackson* Circuit Court.
Hon. R. H. POWELL, Circuit Judge.

*Coody* for appellant:

The condition of the bond was, "That he would *well and truly perform the duties of his office,* and *pay over* to the proper officer or person *all moneys* that may come to his hands *by virtue of his office.*" *Gantt's Dig.,* sec. 1,001.

McCanany received this money *by virtue of his office* as clerk and master, and appellee is clearly liable. See *Gantt's Dig.,* sec. 4,814; *Ib.,* sec. 1,018; *Ib.,* 997; 76 *N. C.,* 78; 63 *N. C.,* 508; 75 *N. C.,* 505; 9 *Yerger,* 102; 3 *Caldwell,* 244; 11 *Kansas,* 378; 2 *Metcalf,* (*Ky.*). 91-2-5; 34 *Ind.,* 105; 2 *Bailey,* (*S. C.*) 28.

*J. W. Butler and U. M. Rose* for appellee:

McCanany received the money by virtue of the special order of the court, and not *by virtue of his office,* and appellee not liable. Cites *Gantt's Dig.,* secs. 4814–15–16–17–18–19; *Hardin's Ex.* v. *Garrico,* 3 *Met.,* (*Ky.*) 289; 9 *Yerger,* 102.

STATEMENT.

ENGLISH, C. J.   On the twenty-fifth of February, 1871, Michael McCanany was appointed and commissioned by the Governor county clerk of Jackson county.

On the fourth of March, 1871, he executed a bond to the State in the penal sum of $3,000, with Elbert C. Watson, and others, sureties, conditioned that he would "well and truly perform the duties of said office, and pay over to the proper officers or persons all moneys that may come into his hands by virtue of his office," &c., &c.

12–38

On the eleventh day of May, 1872, in a suit for partition pending in the Circuit Court of Jackson county, wherein John Billings and William Billings, minors, by their next friend, R. R. Kellogg, were . *ex parte* plaintiffs, a special commissioner who had been appointed at a previous term of the court to make sale of a tract of land, reported that he had made the sale as ordered, and the land sold for $763,62, and the court confirmed the sale, directed a deed to be made to the purchaser, and after allowing certain claims against the fund, concluded the order as follows:

"And it further appearing to the court that there is no regular and qualified guardian for said minors, and that they are non-residents of this county, it is ordered that the remainder of said purchase money be paid into this court, and a receipt therefor given to said commissioner by Michael McCanany, clerk of this court, and the said money be safely kept by said clerk until such time as a duly qualified guardian be appointed for said minors, and that upon the appointment of such guardian, and a demand therefor being made by him, the said clerk shall deliver the money to him, and take sufficient voucher therefor."

The present action was brought in the name of the State, for the use of John and William Billings, upon the bond of Michael McCanany, as such clerk, against Elbert L. Watson, one of the sureties.

For breach of the condition of the bond, the complaint set out the above order of the court made in the partition suit, and alleges that thereunder Michael McCanany, as such clerk, received of the commissioner $646.19.

That by order of the same court made fifteenth day of September, 1873, it appearing to the court that Allen Dills had been duly appointed guardian of said minors, said McCanany, as such clerk, was directed to pay over to him said sum of money, which he failed and refused to do.

State, use, etc., v. Watson.

The court sustained a demurrer to the complaint, interposed by defendant, on the ground that it did not state facts sufficient to constitute a cause of action ; and plaintiff resting, defendant was discharged by final judgment, and plaintiff appealed.

## OPINION.

By virtue of his office as county clerk, and under the same bond, McCanany was clerk of the circuit court, and master and commissioner in chancery. *Gantt's Dig., chap.* 36.

The money brought by the sale in the partition suit, and belonging to the two minors, was placed, by the order of the court, in his custody as clerk ; he unquestionably held it in his official capacity, and not as an individual, and might have been punished for contempt for failing to pay it over as ordered by the court, and deprived of his office for malfeasance.

1. CLERK CIRCUIT COURT: Liability of himself and sureties for money in his custody.

Was there a liability upon his bond as clerk for failure to pay over the money? His Honor, the circuit judge, held there was not.

If the clerk had been ordered to sell the land as commissioner in chancery, he and his sureties on his bond as clerk, would have been responsible for the money. *State ex rel. Cox* v. *Blair*, 76 *N. C.*, 78 ; *State ex rel. McNeill*, 63 *Ib.*, 508.

The special commissioner who made the sale was not a bonded officer, hence the court directed him to pay the money into court, and ordered the clerk, who was a bonded officer, to keep it in his official custody until a guardian should be appointed for the minors, and after the guardian was appointed, the court ordered the clerk to pay the money over to him, which he failed to do.

When the money was brought into court by the commissioner, the court might have ordered the clerk to deposit it

in a bank for safe keeping, if there had been one in Jackson county or an adjoining county. *Gantt's Dig.*, 4818.

Had such order been made, and , had the clerk, instead of obeying it, put the money in his pocket, and converted it to his own use, no doubt he and his sureties would have been liable on his bond for it. So if he had put the money in bank, and the court had ordered him to check for it, and pay it over to the guardian of the minors, and he had drawn it, and then instead of paying it over as directed, converted it to his own use, he and his sureties would have been liable on his bond for it.

The court of chancery has power to appoint a receiver, and require him to take an oath, and give a bond, in the cases specified in the statute. *Gantt's Dig.*, 4809–13. But this case was not within the letter of the statute. No doubt the court, in the exercise of its general chancery powers, might have appointed a receiver, and required him to take an oath, and give a bond, and ordered the money into his custody, until the guardian should be appointed. But the court deemed it proper to order the money into the custody of its own sworn and bonded clerk, and if the order was not literally within the provisions of section 4814, *Gantt's Dig.*, it was within the general powers of the court.

In some of its features, but not in all of them, this case is like that of *Hardin's exrs.* v. *Carrico*, 3 *Metcalf*, (*Ky.*) 261. In that case the condition of the bond of the clerk was, that he would "well, truly and faithfully discharge the duties of clerk &c., and pay over and account for all taxes, fines and other *public moneys* which might come into his hands as clerk." In a suit pending in court, an order was made reciting that one of the parties to the suit deposited money in court, which was to be held subject to the future order of the court. Afterwards a receiver was ap-

pointed in the suit, and he was directed to collect the money which had been deposited in the hands of the clerk, who, in the meantime, had died. The court held that a surety of the clerk was not liable for the money; that it was not *"public moneys,"* and hence not within the condition of the bond. The court also held that there was no statute authorizing the clerk to be made the custodian of the money paid into the court by a party to a suit, and that it should have been placed in the hands of a receiver.

In this case the condition of the bond was to "pay over to the proper officers or persons all moneys that may come into his hands by virtue of his office," &c.

Here the money was not paid into court by a party to a suit, but the court ordered the commissioner to pay it into court, and placed it in the official custody of the clerk, to be safely kept, and paid out as ordered by the court.

The case of *Waters* v. *Carroll, Governor,* 9 *Yerger,* 102, favors the decision of the court below, but in the later case of *Craig, et al.,* v. *The Governor,* 3 *Caldwell,* 244, it is shown that money may be placed by order of court in custody of the clerk and master, which he cannot pay out without an order of court, and for which he and his sureties are responsible on his bond.

It often happens in the progress of suits that money is brought into court, and placed in the custody of the clerk until disposed of by order of the court, and it would be unsafe to hold that the clerk and sureties are not responsible on his official bond for such moneys.

Under the English chancery system, until the passage of the act of 12 George I, providing for an Accountant General, the master had custody of money &c., paid into court, and delivered the money, &c., into bank, and drew it out, &c., under orders of court. 2 *Daniel, Ch. Pl. & Prac.,* p. 1,771.

*McCanany* was both clerk and master.

The court below erred in sustaining the demurrer to the complaint.

Reversed, and remanded for further proceedings.