## MARTIN *v.* BOGARD.

### Opinion delivered February 6, 1928.

1. CLERKS OF COURTS—DISTRIBUTION OF FUNDS—NEGLIGENCE.—A clerk of court and sureties on his bond are liable for his negligence in not promptly obeying an order for the distribution of a fund paid to him as clerk, which he deposited in bank of which he was director, without order of the court, which bank became insolvent.

2. CLERKS OF COURTS—NEGLIGENCE IN FAILING TO CASH CHECK.—A clerk of court and sureties on his bond are liable for his negligence in not promptly cashing a check drawn by his predecessor in office for a fund paid to him in his official capacity and by him deposited in a bank which became insolvent, without an order of court authorizing such deposit.

3. CLERKS OF COURTS—EXCUSE FOR FAILING TO DISTRIBUTE FUNDS.—In a suit against a clerk of court and the sureties on his bond for negligence in failing to obey promptly an order to distribute a fund in his hands, the clerk is not excused from obeying the order because of a supersedeas bond filed more than 30 days after the order was made, since, under Crawford & Moses' Dig., § 7160, the bond was filed too late to authorize the issuance of supersedeas.

4. APPEAL AND ERROR—TIME FOR FILING SUPERSEDEAS BOND.—Under Crawford & Moses' Dig., § 2160, the clerk was without authority to accept and file a supersedeas bond executed more than 30 days after the judgment had been rendered, or to issue a supersedeas thereon.

5.  CLERKS OF COURTS—EFFECT OF ORDER TO DISTRIBUTE FUNDS.—An order of the court directing the clerk to distribute funds held by him in his official capacity, *held* to apply to his successor in office without the necessity for a new order.

6.  CLERKS OF COURTS—DEPOSIT OF FUND IN BANK.—A clerk of court who deposits in bank, without authority from the court, moneys which constitute a fund in court, does so at his peril, and will be responsible on his official bond if the bank fails.

7.  APPEAL AND ERROR—INEFFECTIVE SUPERSEDEAS BOND.—While a supersedeas bond filed more than 30 days after the judgment is ineffective as a supersedeas bond, it is nevertheless good as a common-law bond, and the sureties are liable thereon for damages sustained by appellees.

8.  APPEAL AND ERROR—LIABILITY OF SURETIES ON INEFFECTIVE SUPERSEDEAS BOND.—Where a bank which was one of the distributees of a fund failed to prosecute an appeal from a judgment ordering distribution, the sureties on its ineffective supersedeas bond are liable to the other distributees only for the interest on the fund to which each of such distributees was entitled under the judgment.

9.  CLERKS OF COURTS—LIABILITY FOR FAILURE TO DISTRIBUTE FUND.— A clerk of court, though negligent in not promptly obeying an order of court to distribute a certain fund, is not liable to the sureties on an ineffective supersedeas bond for the sureties' liability to certain distributees, because a dissatisfied distributee had not prosecuted an appeal from the order of distribution.

10. BANKS AND BANKING — DISTRIBUTION OF ASSETS OF INSOLVENT BANK.—Distributees of a fund which a clerk of court had deposited in a bank, which became insolvent after taking over another bank which was a distributee, *held* entitled only to the proportionate share of 20 per cent. dividend paid by the Bank Commissioner under order of court, and hence it was error to order a surplus payment on hand to be paid to one of the distributees, since such surplus should have been ordered returned to the Bank Commissioner for distribution among all of the bank's creditors.

Appeal from Cross Chancery Court; *C. D. Frierson,* Special Chancellor; reversed in part.

*Mann & Mann, Ogan & Shaver* and *Block & Kirsch,* for appellant.

*Sivley, Evans & McCadden, Killough, Killough & Killough,* and *M. B. Norfleet, Jr.,* for appellee.

McHANEY, J.  Appellant R. A. Martin was, until January 1, 1925, and for some years prior thereto, clerk of

the circuit and chancery courts of Cross County, and the appellants R. L. Block and N. B. Martin were the sureties on his official bond. Appellant E. L. Cooper became the clerk of said courts on January 1, 1925, and is now such clerk, and the appellants W. W. Stacy and O. C. Beamon are the sureties on his official bond. In a suit which originated in the circuit court of said county, but which was later transferred to the chancery court, in which the Parkin Home Bank was plaintiff, A. N. Beattie and A. R. Bogard were defendants, and certain insurance companies that admitted liability to said Bogard in the sum of $7,311.19 were garnishees, and appellee F. W. Dewson, doing business as the Shelby County Oil Mill, was intervener, the court made an order, on the 17th day of April, 1924, directing the garnishees to pay said sum to R. A. Martin, as clerk of the court, which they did, and were discharged from any further liability in the case. Martin accepted said sum from the garnishees, and deposited same in the Bank of Parkin, of which he was a director, on April 18, 1924. Thereafter, on the 22d day of September, 1924, the chancery court entered a decree in that cause, by which judgment was given in favor of the Parkin Home Bank against Beattie in the sum of $4,943.45, with interest, against the defendant A. R. Bogard, in the sum of $3,000, with interest at the rate of 8 per cent. per annum from August 4, 1922. In the same suit the intervener, Dewson, recovered judgment against Bogard in the sum of $2,812.70, with interest at the rate of 8 per cent. per annum from April 15, 1924, and it was further decreed that A. R. Bogard recover judgment against the plaintiff, Parkin Home Bank, in the amount of the interest at 6 per cent. per annum from December 17, 1923, on the sum of $7,311.19. And it was further decreed "that R. A. Martin, clerk, from the funds in his hands pay all costs herein accrued, the judgment of F. W. Dewson and the judgment of the Parkin Home Bank against the defendant A. R. Bogard, after first deducting from said judgment of Parkin Home Bank against the defendant, A. R. Bogard, an amount

equal to the interest on the sum of $7,311.19, as stated."

This judgment was rendered on September 22, 1924, as heretofore stated, but was not entered until December 17, 1924. The Parkin Home Bank, not being satisfied with the decree of the court, prayed and was granted an appeal to the Supreme Court, and on December 20, 1924, filed with Martin, as clerk, its supersedeas bond, with R. V. Wheeler, Sidney F. Stallings and R. W. Minnie as sureties thereon. No appeal was prosecuted from this judgment, and the clerk, Martin, did not comply with the order of the court by paying out the funds in his hands, as directed. On January 1, 1925, Martin went out as clerk, and was succeeded by Cooper, and on February 23, 1925, Martin gave his check to Cooper for the full amount of the deposit in the Bank of Parkin.

On January 9, 1924, by direction of the Bank Commissioner, the Parkin Home Bank ceased doing business as a banking institution, and was taken over by the Bank of Parkin, a new institution organized for such purpose, with substantially the same officers and stockholders as the Parkin Home Bank, which purchased all the assets of the Parkin Home Bank, except a list of assets that the Bank Commissioner would not permit to be taken over by the new bank, in the sum of approximately $140,000, for which the Parkin Home Bank executed its note to the Bank of Parkin, and the assets not acceptable to the Commissioner were pledged as collateral to secure the note of the Parkin Home Bank. The Parkin Home Bank was insolvent at the time on account of the paper the Bank Commissioner required to be taken out of the assets. Martin continued to be a director in the Bank of Parkin. Thereafter, on the 23d day of March, 1925, the Bank of Parkin was declared insolvent, and taken over by the Bank Commissioner for liquidation. At the time its doors were closed appellant Cooper had never presented the check given him by Martin for the fund in court, but still held it, without making any effort to collect same or to perform the order of the court in distributing said fund in accordance with the

decree rendered September 22, 1924, and entered December 17, 1924.

So, in August, 1925, appellees Bogard and Dewson brought this suit against all the appellants and all the other appellees, including Sidney F. Stallings, who does not appear to be a party to this appeal, and Loid Rainwater, the then State Bank Commissioner, to recover from them the respective amounts of their judgments as heretofore set out and due them as determined in the prior suit, and which was not paid by reason of the failure of the Bank of Parkin. Neither Martin nor Cooper filed any claim with the Bank Commissioner for the $7,311.19, but later a dividend was paid by the Bank Commissioner, under order of court, to the Cross County Bank, as registrar of the court, in the sum of $1,462.23, which was 20 per cent. of said fund in court, pending determination as to who was rightfully entitled thereto.

The Bank Commissioner answered that, under the terms of the original decree, and of the fund in court deposited in the Bank of Parkin, he was entitled to offset the amount of the judgment in favor of the Parkin Home Bank, which, with interest to the time the Bank of Parkin was taken over by him, amounted to $3,634.70, and which, when taken from the original fund, including interest to said date, amounting to $7,865.62, would leave a balance of $4,241.38, held by him as a general deposit as of said date, on which dividends are payable as made to all creditors of the bank. He further alleged that, on said date, the amount of Dewson's claim, with interest, was $3,024.10, and Bogard's $1,206.82, which latter amount was the balance due Bogard under the terms of the original decree, after paying his indebtedness to the bank, with interest, and taking out the indebtedness due Dewson; that, after paying the 20 per cent. dividend on said respective sums, there was a balance in the hands of the Cross County Bank, as registrar, in the sum of $616.05, which should be paid back to the liquidating agent into the general assets for distribution among the general creditors of the Bank of Parkin.

On a final hearing the court entered a decree in favor of Bogard and against appellants, the two clerks and the sureties on their respective bonds, in the sum of $1,206.82, with interest at 6 per cent. from March 23, 1925; in favor of Dewson against the same appellants in the sum of $3,024.10, with interest at 6 per cent. from March 23, 1925; and in favor of Bogard and Dewson against Minnie and Wheeler for interest on their respective sums due them from the fund in court from the 22d day of September, 1924; and in favor of Minnie and Wheeler against the two clerks and their sureties, the amounts decreed against them in favor of Bogard and Dewson. The court denied the prayer of the Bank Commissioner for the return of $616.05, and ordered the amounts paid to Bogard and Dewson as a dividend on their claims, to be credited therewith, and that the additional sum of $616.05 in possession of the Cross County Bank be paid to Dewson and applied as an additional credit on his claim; that Minnie and Wheeler should pay one-half the costs in this action, and that the two clerks and their sureties should pay the other one-half thereof, and that Minnie and Wheeler should pay all costs in the original action. The court also allowed, as a claim against the Bank Commissioner, the amount due Bogard in the sum of $1,206.82, and the amount due Dewson in the sum of $3,024.10. From this judgment the two clerks and their sureties have appealed, and Bogard and Dewson have taken a cross-appeal against Minnie and Wheeler.

1. As to the liability of the two clerks and their sureties, the lower court found that they were both guilty of negligence in the handling of said fund, and that they were therefore liable to the appellees Bogard and Dewson therefor. We think the court must be sustained in this regard. R. A. Martin, clerk, permitted said sum to remain in the Bank of Parkin from April 18, 1924, until February 23, 1925, at which time he gave a check to Cooper, during all of which time he was a director in the Bank of Parkin, and had been a director in the Parkin Home Bank prior to its failure, and he must have known

of the insolvent condition of the Bank of Parkin at the time of giving this check, and prior thereto. The Bank of Parkin was closed within less than thirty days after giving such check. Cooper was negligent in not cashing said check within a reasonable time after he accepted same, and both were negligent in not distributing the funds to the parties entitled thereto, in compliance with the order of the court. Martin says the reason he did not distribute it was because of the supersedeas bond, and Cooper says the reason he did not cash the check was because he had no order of court to do so. But the filing of the supersedeas bond did not excuse Martin from distributing said funds, for the reason that said bond was filed too late for the clerk to issue a supersedeas thereon, for at that time only the clerk of the Supreme Court could have done so. Section 2160, C. & M. Digest, reads as follows: ''Where the appeal is granted by the court rendering the judgment or order, and the bond is executed within thirty days thereafter, before the clerk of such court, the supersedeas shall be issued by such clerk; in all other cases it shall be issued by the clerk of the Supreme Court.'' Therefore, since the supersedeas bond was filed more than thirty days after the rendition of the judgment, Martin had no authority to accept and file same, or to issue a supersedeas thereon. Hence the filing of the supersedeas bond was no authority for Martin's withholding the distribution of the fund in court. Neither did Cooper require an order of court directing him to cash said check and distribute said fund in accordance with the order of the court, as the fund had not been deposited in the Bank of Parkin by order of the court. It was the voluntary act of Martin in so doing, and was the voluntary act of Cooper in permitting it to remain there after receiving the check from Martin, for the period of time shown here. Cooper was the clerk after January 1, 1925, and the order of the court directing the clerk to distribute the funds applied to him the same as to the previous clerk, after he went into office.

Learned counsel for appellant urgently contend that a clerk who receives custody of private funds under the order of court, and places same in a bank reputed to be solvent, and that later the bank fails and the said fund is lost, without any negligence on the part of the clerk, the clerk and his sureties would not be liable therefor. Several cases from courts of other States are cited to support this principle, but we are of the opinion that this court is committed to the contrary rule. In the case of *State* v. *Watson*, 38 Ark. 96, this court held, quoting the syllabus, which is sustained by the opinion in the case, as follows:

"When money in the control of the circuit court is, by its order, placed in the custody of the clerk, he holds it in his official capacity; and may be punished for contempt for failing to pay it over as ordered by the court, and deprived of his office for malfeasance; and he and his sureties will be liable for it on its official bond to the party entitled to it."

True, in that case, the money had not been deposited in a bank by the clerk, and there is this difference in the facts of the two cases. In that case the court ordered the clerk to pay the money over to the party entitled thereto, which he failed to do, and this court, in discussing the case, commented upon § 4818 of Gantt's Digest, now § 1349, C. & M. Digest, relating to the deposit of funds in court in bank by order of the court. No such order was made in that case, and none was made in this. The clerk, on his own motion, and without any authority from the court, deposited the funds in the Bank of Parkin, a bank of which he was a director, which had taken over a former insolvent bank of which he was a director, and in which the note of the former bank was listed among the assets in the sum of $140,000, and which latter bank failed only a short time more than a year after its organization. See also *Howard* v. *United States* (C. C. A.) 102 Fed. 77.

We therefore hold that, unless the clerk of the court is protected by the order of the court, as provided in

§ 1349 of the Digest, in depositing moneys which constitute a fund in court in a bank, he does so at his peril, and will be responsible therefor on his official bond on failure of the bank. If he desires protection, he should obtain an order of the court directing him to deposit the fund in the bank.

2. The next question for consideration is the liability of the sureties on the supersedeas bond. The lower court held Minnie and Wheeler liable only for the interest on the respective amounts due Bogard and Dewson as of September 22, 1924, with interest thereon from the 23d day of March, 1925, until paid, such amounts being, respectively, $36.85 and $106.40. We think the decree of the court was correct in this regard. The supersedeas bond was filed out of time, and did not become effective as a supersedeas bond, but was good as a common-law bond to pay appellees, Bogard and Dewson, such costs and damages as they might sustain, and the damages sustained would be the interest on the funds to which Bogard and Dewson were entitled, including the costs, which the court adjudged properly. Moreover, even though said supersedeas bond had been effective as such, there could have been no further liability thereon to Bogard and Dewson, as they did not obtain any judgment against the Parkin Home Bank, but only a judgment against the clerk, directing him to distribute the funds in his hands. The bank was dissatisfied with the amount recovered by it in the order of distribution, and was appealing from that order, but not from any judgment of Bogard and Dewson against it. We do not think the appellants are liable to Minnie and Wheeler for these sums adjudged against them.

3. The order of the court directing the Cross County Bank to pay to Dewson the $616.05 held by it was erroneously made. Bogard and Dewson were entitled to the same dividend on their respective claims as the other creditors of the bank. The liquidating agent had deposited a dividend of 20 per cent. on the total fund of $7,311.19, or $1,462.23, in the Cross County Bank, as reg-

istrar of the court, for the benefit of the parties entitled thereto. The claim of Bogard was allowed in the sum of $1,206.82, and the claim of Dewson in the sum of $3,024.10, and 20 per cent. of their respective claims was properly paid to them. The $616.05 left over out of this fund, after paying the correct amount to Bogard and Dewson, should have been ordered returned to the liquidating agent for distribution to all the creditors of the bank. Otherwise, if the order of the court is carried out, Dewson would become a preferred creditor of the bank, which he is not.

We therefore sustain the contentions of the Bank Commissioner on his cross-appeal. The judgment will therefore be affirmed on the appeal and the cross-appeal against Minnie and Wheeler, and reversed on the cross-appeal of the Bank Commissioner and on the judgment against appellants in favor of Minnie and Wheeler, with directions to enter a decree in accordance with this. opinion.