NORTHWESTERN MANUFACTURING COMPANY, Appellant, v. GEORGE S. BASSETT et al., Appellees.

APRIL 3, 1928.

*Robert Healy*, for appellant.

*Helsell, Helsell & McCall, Mitchell, Files & Mulholland, Hanson & Schaupp, C. M. Hanson,* and *Price & Burnquist,* for appellees.

KINDIG, J.—In the year 1923, plaintiff-appellant instituted condemnation proceedings in the district court, to condemn

certain lands along the Des Moines River for overflow purposes in the building of a dam. A sheriff's jury was impaneled, and on the 5th day of July, that body made its return, fixing the damages in the sum of $9,995. As required by law, appellant paid that sum to the appellee George S. Bassett, who was then sheriff of Webster County. Some of the property owners appealed, and the amount of the damages assessed for these particular real estate owners was held by the sheriff, pending the appeal.

That litigation was not consummated until after the expiration of this sheriff's term, which ended January 1, 1925. He was succeeded in office by the appellee John P. Lochray, who commenced his term January 1st of that year. At this time, an accounting was had with the appellee Bassett, and he turned the specific funds in question over to the incoming officer, John P. Lochray, who duly receipted therefor. There were added to the original deposit additional sums to meet the increased assessment made in the district court. Afterwards, certain appeals were taken to this court. The sureties on Bassett's bond were appellees H. P. Delamore and J. P. Hanrahan, while the surety on Lochray's bond was the appellee American Surety Company of New York.

Such trust funds were kept by both officials, during their respective terms, in the Webster County Trust & Savings Bank of Fort Dodge. Said institution closed its doors and went into the hands of a receiver on or about the 15th of January, 1925. All pending litigation was settled or consummated, and consequently demand was made on the appellees, February 2, 1926, for the payment of the trust money. Non-compliance with this request resulted, on the theory that the money, without negligence, had been deposited by these officials in a reputable, going banking concern, which became defunct, as aforesaid. Each claim in the premises was assigned to appellant, and no objection was made to its right to bring this suit or recover because it is not the proper party plaintiff.

Primarily, the petition is based upon the individual official bonds, especially the provision common to each, to the following effect:

"That as such sheriff of Webster County, Iowa, he [appellee Bassett, in the one, and appellee Lochray, in the other]

will render a true account of his office, and that he will promptly pay over to the officer or person entitled thereto, all moneys which may come into his hands by virtue of his office; that he will promptly account for all balances of money remaining in his hands at the termination of his office."

Defense on behalf of each sheriff and bondsman is predicated upon the thought that the "deposit" was made in the financial institution in good faith, without negligence, and in the exercise of due care; and in addition thereto, Bassett pleaded settlement with Lochray.

I. Appellee Bassett, and his bondsmen, H. P. Delamore and J. P. Hanrahan, can in no event be liable in the case at bar, for the reason that the accounts of this officer were approved at  the expiration of his term, and the proceeds involved turned over to and accepted by the new sheriff, Lochray, who duly made, executed, and delivered his receipt therefor. Every demand made upon Bassett had been met, and all amounts due were timely and legally paid by him when called upon. Due to the appeals, the balance of the trust money remaining from time to time was rightly retained by him during his term, and in view of the fact that the litigation was still pending at the end thereof, it was the duty of the retiring officer to deliver the particular trust items to the incoming sheriff. Thus it was done, and about this, appellant has no right to complain.

Accordingly, the court's action in directing a verdict in favor of Bassett and his bondsmen was correct.

II. Constantly, throughout appellant's argument, it complains because, in submitting the case against Lochray and his surety, the American Surety Company, the question of freedom from negligence, as a defense, was given to the jury.

Basis for the district court's action in this regard was the theory that the sheriff had a right to place the "trust funds" in a banking institution for the purpose of safe-keeping, providing he did so with an honest intention, and in the exercise of due care.

Manifestly, this was right, as a general proposition, in the event it is limited to a demand "deposit;" for a public officer, in the absence of a controlling statute, is not required to carry the

"trust funds" under his care around in his pocket, or attempt to hide the same in a safe or some other receptacle in his office. It is his privilege to follow modern business methods in using the bank as a depository to care for, maintain, and preserve the public money, so long as, in doing this, he is free from negligence, bad faith, or fraud. *Officer v. Officer,* 120 Iowa 389; *Incorporated Town of Conway v. Conway,* 190 Iowa 563; *Leach v. Beazley,* 201 Iowa 337; *Hanson v. Roush,* 139 Iowa 58; *Brown v. Sheldon State Bank,* 139 Iowa 83; *School Township v. Stevens,* 158 Iowa 119; *Hansen v. Independent Sch. Dist.,* 155 Iowa 264.

Hence, because this thought was pleaded as a defense, it was proper for the trial court to submit the idea to the jury under appropriate instructions, provided the facts and circumstances warranted it.

III. But appellant argues, assuming the above pronouncement to be in accord with the settled principles of our law, that, because the "deposit" in question was for a fixed time, rather than subject to withdrawal on "demand," the rule is different. We now direct our attention to that hypothesis.

When the retiring sheriff transferred the trust money to appellee Lochray, the method used was a certificate, which instrument was surrendered to the bank by Lochray, and three new "certificates" were demanded and accepted in lieu thereof. With the exception of the amounts payable and the numbers, these were each, in words and figures, as follows:

"Webster County Trust and Savings Bank, Fort Dodge, Iowa, Dec. 29, 1924. No. [the numbers were 1953, 1954, and 1955, respectively]. John P. Lochray, Sheriff, has deposited in this bank the sum of [the amounts named were $1,000, $500, and $479.15, respectively], payable in Current Funds to the order of self in 6–12 months from date on the return of this Certificate properly endorsed, with interest at 4 per cent per annum.

"Certificate of Deposit. Not subject to check.

"J. L. Hanrahan, Cashier."

Withdrawal of the moneys involved could not be made under that contract until the expiration of the time named. *Thompson v. Farmers State Bank,* 159 Iowa 662. See, also, *Henderson v. Farmers Sav. Bank,* 199 Iowa 496; *Hunt v. Hopley,* 120 Iowa

695. *Thompson v. Farmers State Bank,* supra, contains this language:

"Demand certificates of deposit are issued with the design that they pass as money, and are taken with as much confidence as the bills of a bank, and often to avoid the risk and inconvenience of keeping or carrying and counting sums of money, and are so regarded in mercantile affairs. * * * But, when payable at a fixed time in the future, certificates do not so pass, and when so payable, the bank issuing them is under the same duty to pay at maturity as the maker of a promissory note. In either event, a right of action accrues at the time specified for maturity."

So, then, a situation confronts us where the officer could not retake the money deposited whenever it was demanded or desired, but must wait for the return thereof until the arrival of the due date fixed in the "deposit" agreement. Therefore, the result was more than the placing of money in a bank for safekeeping, to be taken out at will, as under a "demand deposit." Parenthetically, we note that the outcome might be different if the method used were absolute in form only; but in fact there was an independent co-existing enforcible agreement, permitting Lochray to accomplish immediate payment at any time, according to his option.

Next for our determination is whether or not the status actually existing in the record before us meets the demands of the occasion, as required by the mandates of the bond upon which appellant's cause of action is founded. Statutory enactments are involved. This "official bond" is itself statutory; so also are the obligations placed upon the sheriff in carrying out the condemnation proceedings. Those legislative acts will now be considered.

Code of 1924, Section 1059, reads:

"All * * * public officers, except as otherwise specially provided, shall give bond with the conditions, in substance, as follows: That as .......... (naming the office), in ............ (* * * county * * *) he will render a true account of his office and of his doings therein to the proper authority, when required thereby or by law; that he will promptly pay over to the officer or person entitled thereto all moneys which may come into his hands by virtue of his office; that he will promptly account for all balances of money remaining in his hands at the termination

of his office; that he will exercise all reasonable diligence and care in the preservation and lawful disposal of all money, books, papers, securities, or other property appertaining to his said office, and deliver them to his successor, or to any other person authorized to receive the same; and that he will faithfully and impartially, without fear, favor, fraud, or oppression, discharge all duties now or hereafter required of his office by law."

Section 1062 of the same Code provides:

"All bonds required by law shall be construed as impliedly containing the conditions required by statute, anything in the terms of said bonds to the contrary notwithstanding."

Substantially to this effect was the language of the undertaking in litigation. These obligatory requirements must be given application and effect within the purview and scope of the express statutory requests relating to "condemnation proceedings." They are the following sections of the 1924 Code:

"7847. The sheriff shall not, after being served with notice of appeal by the applicant, pay to the claimant any deposit of damages held by the sheriff, but *shall hold the same until the appeal is finally determined.*" (The italics are ours.)

"5193. On or before the first day of January in each year the sheriff of each county having any condemnation funds in his possession shall make a detailed report under oath of all funds in his possession received from condemnation proceedings of any kind that have been finally adjudicated, reciting therein the names of the parties to whom said funds belong, when received, and describing the property condemned, which report shall be filed with the county treasurer, and the sum so shown due from such sheriff paid over to the county treasurer, who shall make a detailed receipt therefor."

"5194. Every sheriff having any condemnation funds in his possession in cases not finally adjudicated, shall make a further report of funds received by him in such cases, in detail as called for in the preceding section, and file the same with the county auditor for examination and checking by the board of supervisors, and where any sheriff's term is expiring he shall pay such condemnation funds in cases not finally adjudicated to his successor in office, taking his receipt therefor."

"5196. Any sheriff receiving funds as provided in the second preceding section shall list the same in detail in a book kept

for that purpose, and pay the same to the parties entitled thereto; upon final adjudication of such cases, or if held, after final adjudication until the end of the calendar year to the county treasurer as provided in the third preceding section.''

''5197. Nothing contained in the four preceding sections shall be construed as relieving such sheriffs or the sureties on their bonds from liability for such funds so received by them until such payment has been made to the county treasurer or successor in office as herein provided.''

No payment by appellee Lochray was made to the county treasurer, as above authorized, nor was the subject of the trust delivered to the condemner or the property holders entitled thereto.

Resultantly, if there is to be relief from liability, it must be due to the fact that this officer was excused from so doing because he properly ''deposited'' the ''trust funds'' in the bank. Had he made a ''demand deposit,'' the outcome of the trial would have exonerated him, and this appeal would result in an affirmance of the trial court's judgment. However, that was not the nature of the ''deposit'' made; for, rather than being subject to withdrawal on demand, it, under the contract with the bank, was required to remain for the specified period. Did appellee Lochray, in the premises, ''hold the'' ''trust funds'' ''until the appeal'' was ''finally determined?'' Our answer is in the negative. What is meant by ''hold,'' under Section 7847, above quoted? Certainly, due to the necessity of the occasion, it must mean maintenance subject to payment unto whomsoever is entitled thereto, whenever the demand is legally made therefor. Lochray, the appellee, had no intimation as to when he would be called upon to make delivery of these funds to such person or institution, nor was he licensed to speculate concerning the same. Perhaps the litigation would not be ended or the controversy settled for six months or a year; but no one knew, and this officer had no right to take anything for granted in this regard. But rather, he, under the statute, was required ''to hold'' these proceeds of the condemnation and keep himself in readiness to make delivery thereof to the rightful owner whenever the law made this imperative. Also, it is immaterial as to when the demand therefor was actually made, so far as this case is concerned. In fact, the pivotal point is deeper than this. Obviously, the sheriff

could not produce the items in dispute if he, through the contract of "deposit," had bound himself to leave those very funds in the bank for the months stipulated.

Business suspension by the bank and the intervention of the receiver do not change the result; for that circumstance, under the facts here involved, is quite immaterial. Conclusion on this point is reached because the breach of the "bond" in the instant case was completed when the "time deposit" was made, rather than at the moment the bank failed. The cause of action here accrued at the instant of the technical conversion: to wit, when the sheriff failed "to hold" the funds, as specified by said Section 7847. *Murray v. First Tr. & Sav. Bank*, 201 Iowa 1325, discusses the distinction between a deposit, as such, and a loan, saying that the time thereof alone does not furnish the line of demarcation. Yet that does not change the conclusion here, because of the fact that the primary consideration is not that the action taken by the sheriff amounted to a loan, but rather, the criterion is, Did he comply with the conditions of his "bond," as imposed by the mandates of the statutes hereinbefore set forth?

Contained in *Independent Sch. Dist. v. Hubbard*, 110 Iowa 58, is a discussion relating to a school treasurer who put money in a bank on "time deposit." Therein we said:

"These [the time certificates] were never paid. The bank failed in March, 1898, and the record does not disclose whether its assets are sufficient to satisfy these certificates. The treasurer had no authority to loan this money for private gain, and the failure of the board to provide compensation for services rendered by him furnishes no excuse for so doing. His duty was to hold the money subject to orders of the proper officers, and he had no right to use it in any other way. * * * As between himself and the bank, the latter merely owed him a debt. As to him, it was a private loan of public money, and a conversion of it."

Undoubtedly, Sheriff Lochray, in the case before us, unlike the treasurer in the *Hubbard* case, was not endeavoring to reap "private gain." He says, and we assume the fact to be true, that his thought was to obtain the interest for those entitled thereto, if the law required that (a fact about which he was not informed, one way or the other).

Nevertheless, confronting us is not a question of negligence in deposit, nor is there for decision a case requiring conversion

"for private gain." On the other hand, the sphere of our investigation is limited to a determination of whether or not there was a breach of the "official bond," which required: First, "the sheriff * * * shall hold the same [trust funds in condemnation proceedings] until the appeal is finally determined" (see Section 7847, supra) ; second, "* * * that he [Lochray, the sheriff] will promptly pay over to the * * * person entitled thereto all moneys which may come into his hands by virtue of his office * * *" (see Section 1059, supra) ; and third, "any sheriff receiving funds * * * shall * * * pay the same to the parties entitled thereto, upon final adjudication of such cases [condemnation proceedings]" (see Section 5196, supra).

Applying those essential and positive declarations to the status presented on this appeal, it at once appears that the ground for appellant's cause of action was not the loss of money through carelessness in putting it into the bank, but rather a technical conversion thereof, and the resulting breach of the "bond," because appellee Lochray failed to make the proper holding, as required by said Section 7847, in order that he could at any time pay it over to those entitled thereto, under the insistence of Section 5196, supra. That doctrine was not submitted to the jury. Appellant was prejudiced because of this failure, and is entitled to a new trial.

Before us is not a controversy governed, first, by a statute requiring the public money to be placed at interest; or second, exigencies making it impossible for payment to be demanded before the lapse of the time named in the "certificate of deposit." Necessarily, then, we have not discussed either of those features.

That part of the judgment of the district court relating to George S. Bassett, H. P. Delamore, and J. P. Hanrahan is affirmed, and that portion involving John P. Lochray and the American Surety Company of New York is reversed and remanded.—*Affirmed in part; reversed in part and remanded.*

STEVENS, C. J., and EVANS, ALBERT, MORLING, and WAGNER, JJ., concur.