[No. 25318.    Department One.    November 14, 1934.]
GRAYS HARBOR CONSTRUCTION COMPANY, *Respondent*, v.
PAUL PAULK, *individually and as County Clerk
for Thurston County, et al., Appellants.*[1]

*Yantis & Brodie, Thos. L. O'Leary, James P. Neal,
Harold P. Troy,* and *J. Y. C. Kellogg,* for appellants.

*Harry Ellsworth Foster, Theodore B. Bruener,* and
*Thomas S. Grant,* for respondent.

MAIN, J.—The plaintiff brought this action seeking
a money judgment against the defendant Paul Paulk,
the county clerk for Thurston county, and the New
Amsterdam Casualty Company, the surety upon his

[1]Reported in 37 P. (2d) 584.

official bond. The trial 'resulted in findings of fact from which the court concluded that the plaintiff was entitled to recover. Judgment was entered in favor of the plaintiff for the sum of $1,081.04, with interest thereon, from which the defendants appeal.

The facts are not in dispute, and a brief summary thereof will present the question for determination upon this appeal. As already indicated, the appellant Paul Paulk was the duly elected and qualified county clerk for Thurston county, and the New Amsterdam Casualty Company was the surety upon his official bond. There were paid into the registry of the court, by order of the court, certain moneys in the litigation then pending in the court, which were to be held by the clerk until it was determined in that litigation who was entitled thereto. Paulk deposited this money in the Olympia National Bank, which subsequently failed.

In the litigation in the superior court, it was determined that the respondent in this case, the Grays Harbor Construction Company, was entitled to the money, and it made a demand upon Paulk for the same. In pursuance of this demand, Paulk tendered to the respondent the amount of the dividends which he had received, approximately eighteen per cent, and a certificate from the liquidator of the bank covering the balance of the $1,081.05. This tender was refused, and subsequently, the present action was instituted.

It is expressly stipulated that Paulk as clerk was free from fault or negligence, and that he had no reason, when he made the deposit, to believe that the Olympia National Bank was not a sound financial institution. The question is whether the appellant Paulk and the surety upon his bond are liable for the money of private individuals paid into the registry of the court by order thereof and deposited in the bank which

subsequently failed, in the absence of any showing of fault or negligence.

At common law, clerks of courts were not liable for moneys coming into their possession and subsequently lost without their fault or negligence, and some courts still so hold. Other courts have departed from the common law rule to the extent of holding that, as to public funds coming into the possession of clerks of courts, their liability is absolute, and does not depend upon fault or negligence. We are not, however, here concerned with the common law rule, because in this state, as well as in many others, there is a constitutional provision and a statute which impose upon such clerks a stricter liability than that of the common law. Under such constitutional and statutory provisions, the holding of the courts is almost universal to the effect that, as to public funds, the liability of the clerks is absolute.

This court, in *Fairchild v. Hedges,* 14 Wash. 117, 44 Pac. 125, 31 L. R. A. 851, held that, under the constitution and the statutes of this state, a county treasurer was strictly liable for all public funds coming into his hands, and the exercise by him of ordinary care in the selection of banks in which to deposit such funds would not excuse him from fully accounting for the moneys deposited therein in case of the subsequent failure of the banks. In that case, after a comprehensive review of the authorities, it was said:

"We think that by the great weight of authority upon the question an officer such as a county treasurer under our law is held to the rule of strict accountability."

The holding in that case was based upon § 5 of article XI of the constitution, which provides that:

"The legislature . . . shall provide for the strict accountability of such officers [referring to

county officers] for all fees which may be collected by them, and for all public moneys which may be paid to them, or officially come into their possession,"

and § 211 of the then General Statutes, which provided that:

"All moneys received by him for use of the county shall be paid as the commissioners shall from time to time direct, except where special provision is made by law for the payment of such moneys, by order of any court, or otherwise, and for the faithful discharge of his duties."

in accordance with which a bond was to be given.

In the case of *Kittitas County v. Travers*, 16 Wash. 528, 48 Pac. 340, it was held that a county treasurer and his bondsman were liable for loss of public moneys through the failure of a bank where they had been deposited by the treasurer, even though the deposit had been made therein with the knowledge, consent and approval of the board of county commissioners. By those two cases, it is definitely held that the county treasurer is liable for public moneys coming into his possession, which he deposits in a bank which subsequently fails, notwithstanding the fact that the treasurer was free from fault or negligence. It does not appear to be necessary to here assemble the many cases from other jurisdictions which hold to the same effect, a considerable number of which are cited in the *Fairchild* case.

Inquiry will now be directed as to whether the same rule should be applied where money of private individuals comes into the possession of the clerk by virtue of his office as is applied to public moneys.

Amendment 12 to the constitution of this state, which amends § 5 of article XI, provides that the legislature, by general and uniform laws, shall provide for the election in the several counties of boards of county

commissioners, sheriffs, county clerks, treasurers and other officers mentioned therein, and

" . . . shall provide for the strict accountability of such officers for all fees which may be collected by them and for all public moneys which may be paid to them, or officially come into their possession."

It will be observed that the provision in Amendment 12, with reference to the strict accountability of the officers mentioned, is the same as it was in the original section when the *Fairchild* case was decided.

Rem. Rev. Stat., § 70 [P. C. § 1653], provides that every county clerk, before he enters on the duties of his office, shall enter into a bond which

" . . . shall be conditioned that he will faithfully perform the duties of his office, and account for and pay over all moneys which may come into his hands by virtue of his office, . . ."

When this statute is compared with that referred to in the *Fairchild* case, if there be any difference between the two, it places a stricter liability upon the clerk than did that statute upon the treasurer. The bond in this case was given in pursuance of the statute, and the provisions of the statute are read into the bond if it be that the bond is not as broad as the statute. *Duke v. National Surety Co.,* 130 Wash. 276, 227 Pac. 2. The constitutional provision being the same now as it was when the *Fairchild* case was decided, the present statute placing as strict, if not a stricter, liability upon clerks and their bondsmen than did the statute in the *Fairchild* case, it would seem that it must necessarily follow that the clerk is held to strict accountability for the moneys of private individuals that come into his possession by virtue of his office to the same and like extent as though they were public moneys.

The statute expressly says that the clerk shall give a bond conditioned that he will "account for and pay

over all moneys which come into his possession by virtue of his office." Before it could be held that the clerk, in the case of private moneys, would only be liable where he had been at fault or guilty of negligence, it would be necessary to read into the statute a qualification or limitation which the legislature did not place there, and this the court cannot do, because that is purely a legislative matter.

It is not the character of the fund which fixes the liability of the officer, but the constitution and the provisions of the statute. In *Northern Pac. Ry. Co. v. Owens,* 86 Minn. 188, 90 N. W. 371, 91 Am. St. 336, 57 L. R. A. 634, it was held that, where a statute, either in direct terms or from its general tenor, imposes the duty upon a public officer to pay over moneys received and held by him in his official capacity, the obligation thus imposed is absolute, and there is no distinction between public and private funds. It was there said:

"Upon principle, we are unable to make any distinction between public and private funds in the hands of a public officer, as to his liability therefor. In both cases the funds are paid to the officer in obedience to the mandate of the statute, which makes no distinction between them, and imposes the same duty as to each. The same bond secures both in the same terms. Can it be true that a county can recover on such a bond the amount of a forfeited recognizance lost by the clerk without his fault, but that money received by him in his official capacity for a private party, and so lost, cannot be recovered by an action on the same bond? It is not the character of the fund, but the statute and considerations of public policy, which impose the liability upon the officer. The same considerations of public policy which require that public officers who receive public money be held to a strict measure of responsibility therefor apply just as forcibly to private funds officially received by them, for private property is just as sacred as public property. . . . We hold, therefore, that a public officer is liable for the loss of

private funds received and held by him in his official capacity whenever he would be liable for the loss of public funds under the same circumstances, for in respect to his liability for the loss of money in his official custody there is no distinction between public and private funds.''

The cases of *People v. McGrath,* 279 Ill. 550, 117 N. E. 74; *Smith v. Patton,* 131 N. C. 396, 42 S. E. 849, 92 Am. St. 783; *Martin v. Bogard,* 176 Ark. 203, 2 S. W. (2d) 700, and *State ex rel. Courtney v. Callaway,* 208 Mo. App. 447, 237 S. W. 173, are to the same effect.

The appellants cite the cases of *People v. Faulkner,* 107 N. Y. 477, 14 N. E. 415; *Wilson v. The People,* 19 Colo. 199, 34 Pac. 944, 22 L. R. A. 449, 41 Am. St. 243, and *Northwestern Mfg. Co. v. Bassett,* 205 Iowa 999, 218 N. W. 932, as distinguishing between public funds and private funds, and holding officers to be insurers of public funds, but merely bailees as to private funds. The case of *People v. Faulkner* does support the appellants' contention; but the holding in that case was somewhat weakened by the later case of *New York v. Fox,* 232 N. Y. 167, 133 N. E. 434, where it was distinguished, but not overruled. The other two cases appear to us to be based upon the common law or upon constitutional or statutory provisions which do not call for a stricter rule of liability than that of the common law. In the *Wilson* case, it was said:

''No constitutional or statutory provision in this state imposes a more stringent obligation upon a clerk of the district court than that imposed by the common law.''

However, giving all of the cases cited by the appellants in this connection the full effect claimed for them, we would not be disposed to follow them, because they are not in harmony with the decided weight of authority; and the better reasoning, as it appears to us,

supports the majority rule which makes no distinction between public and private funds under constitutional and statutory provisions similar to those in this state. As above stated, this court has already held, in the *Fairchild* case and the *Kittitas County* case, that a treasurer is held to strict accountability, which was not the common law rule.

It is said, however, that the *Fairchild* case, in effect, recognized that a different rule should be applied to private funds from that which was there applied to public funds. But we do not so understand the holding in that case. It is true that, in the course of the opinion, the court distinguished between the liability of a guardian for the benefit of a private individual and the liability imposed by statute on a public officer. But that is far from holding that a public officer would not be liable for the loss of private funds, except in the case of fault or negligence. The question in the *Fairchild* case was the liability for public funds, and the question of the liability of the officer for private funds was not there involved. Had the court expressed an opinion upon the liability of an officer for private funds, it would have been of no controlling importance, because it would have been with reference to something which was not then before the court for determination.

The trial court in this case rightly held that the clerk and the surety upon his bond were liable for the moneys lost by reason of the failure of the bank in which they were deposited, notwithstanding the fact that the deposit was made without fault or negligence on the part of the clerk.

The judgment will be affirmed.

BEALS, C. J., TOLMAN, MILLARD, and GERAGHTY, JJ., concur.