OPINION OF THE COURT
Lewis R. Friedman, J.
Plaintiff moves to restore the notice of pendency, previously canceled by this court, on the ground that the surety is not authorized to post the undertakings which the defendants have posted.
In this action the city seeks, inter alla, an injunction (1) prohibiting the storage of certain material on defendant’s property, (2) preventing the operation of an illegal construction waste transfer station and (3) requiring removal of the waste on the grounds that its presence violates the New York City Nuisance Abatement Law (Administrative Code of City of New York § 7-703 [f], [1]). Plaintiff filed a notice of pendency as authorized by Administrative Code § 7-706 (e). However, this court, by order entered July 16, 1990, permitted the cancellation of the notice of pendency conditioned on defendants’ posting a $200,000 undertaking pursuant to CPLR 6515, beginning promptly to remove the material from the site, posting a $2,000,000 performance bond to guarantee the removal of unprocessed material and posting a $200,000 performance bond to guarantee the removal of processed material.
On September 12, defendants served and filed the undertakings and performance bonds referred to in the July 16 order. The bonds were all issued by Athens Bonding Company of Dallas, Texas (Athens). Plaintiff expressed no objections to the bonds when they were posted. The notice of pendency was canceled on September 12.
The instant motion, made on December 4, is based on plaintiff’s allegations that Athens, which is not licensed to do an insurance business in New York, was not authorized to issue the bonds. In February 1990 the Texas Commissioner of Insurance issued a cease and desist order which, inter alla, prohibits Athens "as an insurer” from "soliciting or issuing of guarantee bonds, surety or performance bonds”. Plaintiff ar *822 gues that the bonds are invalid because the order prohibits Athens from issuing the bonds filed here.[1]
Defendants contend that the motion is untimely under CPLR 2506, since it was made more than 10 days after the bonds were received by plaintiff. Defendants also contend that the bonds are valid. The case presents several questions, not resolved in the reported cases, concerning the scope of CPLR 2506 and the efficacy of out-of-State surety bonds.
Article 25 is one of the most used, but least cited, provisions of the CPLR. Whenever a court orders the posting of an undertaking in a specified amount, counsel correctly assumes that the posting of a surety company bond is sufficient. Indeed, that is the thrust of CPLR 2502 (a) (1). Problems arise, as in the case at bar, where a party questions the validity of the named surety. CPLR 2506 and 2507 provide a simple procedure, derived from long-standing, pre-CPLR, practice (Civ Prac Act §§ 151, 955, 1104, 1526; Code Civ Pro §§ 690, 1335, 1703, 3274, 3275 [1876]; Code Civ Pro §§ 210, 241, 341 [1848]; see, Lowande v Eisenberg Farms, 285 NY 742), which allows a test of whether the bond is sufficient. Undertakings must be served upon the adverse party and filed with the clerk (CPLR 2505). If a certificate of qualification pursuant to Insurance Law § 1111 is not filed with the undertaking,[2] a party challenging the validity of the bond may, within 10 days of receipt of a copy of the bond, simply serve a notice of exception to the undertaking (CPLR 2506 [a]). That notice shifts to the proponent of the bond the burden of moving to justify the surety, within 10 days of service of the notice of exceptions (CPLR 2507 [a]; see, Liddy v Long Is. City, 102 NY 726). If the proponent of the bond fails to make a timely motion "the *823 undertaking shall be without effect”, except that the surety remains liable until a new undertaking is posted (CPLR 2507 [b]; see, Manning v Gould, 90 NY 476). If no exception is taken within the 10 days, the undertaking is allowed (CPLR 2507 [b]; see, Travis v Travis, 48 Hun 343; Hicksville Hall Corp. v Haber, 43 Misc 2d 512). As the paucity of cases suggests, the notice of exception procedure is almost never invoked.
Without question, had plaintiff timely invoked CPLR 2506, defendants would be required to justify the bond. Plaintiff instead made the instant motion which seeks in part to compel defendants to justify pursuant to CPLR 2507. Insofar as the motion contends that defendants were required to comply with CPLR 2507, it is the wrong procedure and is patently untimely. However, CPLR 2508 permits a party, at any time, to move upon notice to the parties and surety, for "a new or additional undertaking, a justification or rejustification of sureties, or new or additional sureties.” Clearly CPLR 2508 by its terms permits a party to move for justification. One commentator, though, believes that "[t]ardy attacks on the sufficiency of a surety are not the mission of CPLR 2508” (2A Weinstein-Korn-Miller, NY Civ Prac |f 2506.06). Indeed, the drafters of the CPLR clearly intended to the contrary. "Should a party wish to move directly to set aside an undertaking or except to sureties he may move under proposed rule 123.8” (Third Preliminary Report of Advisory Comm on Practice & Procedure, 1959 NY Legis Doc No. 17, at 433). Nothing in the legislative history supports the conclusion that the motion procedure may not be used at any time without proof of unusual circumstances. Of course, the motion procedure differs from the notice of exception route; the burdens of going forward and of ultimate persuasion are different. The movant must show a need for justification and does not gain the effect of automatic invalidity if the proponent of the bond fails to proceed. There is no reason, therefore, to deny the motion out of hand as untimely. The court will construe the instant motion as properly invoking CPLR 2508.
The remaining questions concern the legality of an out-of-State, or "foreign” (Insurance Law § 107 [21]), surety bond, when the Insurance Department of the company’s State of domicile has issued an order to cease and desist from the writing of insurance and surety bonds. This requires an analysis of the rights of foreign insurance companies to issue surety bonds on New York risks.
New York has a comprehensive scheme of regulation of *824 insurance companies to protect the public and the policyholders. Any person who "do[es] an insurance business” in the State is required to be licensed (Insurance Law § 1102 [a]). Insurance Law § 1101 (a), (b) (1) (B) provide that the writing of a surety bond, even if done by mail from outside the State, is the "doing [of] an insurance business”. However, section 1101 (b) (2) provides an exception for
"the following acts or transactions, if effected by mail from outside the state by an unauthorized foreign or alien insurer duly licensed to transact the business of insurance in and by the laws of its domicile * * *
"(E) transactions with respect to policies of insurance on risks located or resident within or without this state * * * which policies are principally negotiated, issued and delivered without this state in a jurisdiction in which the insurer is authorized to do an insurance business”.
Defendants contend that pursuant to that exception Athens need not be licensed by New York in order to write these policies from outside the State.
The defendants do not meet the threshold of showing that Athens is duly licensed to transact an insurance business under the laws of Texas, which is apparently the State of its domicile. The February 1990 cease and desist order issued by the Texas Commissioner of Insurance adopted the factual findings submitted by the staff. Those findings include that Athens "is not incorporated under the laws of the State of Texas and is not licensed under the State Board of Insurance.” The Commissioner, therefore, found that Athens and its principals "are unauthorized persons engaging in the business of insurance in violation of tex. ins. code art. 1.14-1”. This court is bound by the finding that Athens is not licensed in Texas (cf., CPLR 4540). The issue, therefore, is not, as defendants argue, whether Texas Insurance Code article 1.14-1 permits Athens to write policies on out-of-State risks, but rather, whether defendants have shown that Athens’ policies come within the narrow exception to New York’s licensing law. Clearly defendants have not shown that Athens is "duly licensed to transact * * * insurance” as required by the first branch of Insurance Law § 1101 (b) (2).
The policies also fail to meet the second branch of the exception. On its face, Insurance Law § 1101 (b) (2) (E) is internally inconsistent. That is, while subdivision (b) requires only that the exempted activity be "effected by mail”, clause *825 (E) requires that policies be "principally negotiated, issued and delivered” outside the State. In People v British & Am. Cas. Co. (133 Misc 2d 352, 359) the court concluded that the exception applies only to policies physically delivered outside the State. Justice Glen’s careful analysis was based on the intent of the Legislature to regulate the mail order insurance business, the rules permitting a limited definition of the term "deliver” in the highly regulated insurance industry, and the expressed views of the New York State Insurance Department. This court agrees that Justice Glen has correctly rationalized the statutory inconsistency. There is no proof here that the policies here were delivered outside New York. Thus, they are not properly exempted from the Insurance Law.
The Insurance Law was designed to protect New York consumers from unscrupulous operators (cf., Zogg v Penn Mut. Life Ins. Co., 276 F2d 861, 865). Indeed, that was specifically the purpose of regulating the mail order insurance business (1970 McKinney’s Session Laws of NY, at 2898, 3091). New York has carefully regulated the right of foreign insurers to write policies on risks in this State. Thus, the statute permits the imposition of certain financial conditions and permits the Superintendent of Insurance to audit the books of licensed foreign insurers so that insureds and beneficiaries of the policies are protected in the event of loss (Insurance Law § 1106). Also limits are imposed on those specially licensed "excess line” brokers who may procure policies issued by foreign insurers not authorized to do an insurance business in New York (Insurance Law §§ 2105, 2118, 2130). That licensing protects New York insureds and consumers (see, People v Condor of Ams., 43 Misc 2d 899, affd 23 AD2d 822). New York’s interest is in "protecting persons seeking insurance in this state; permitting excess line insurance to be placed with reputable and financially sound unauthorized insurers; and protecting revenues of this state” (L 1988, ch 630, § 1).
Defendants’ arguments are inconsistent with the entire regulatory purpose of the Insurance Law. They contend that New York licensing is unnecessary since Athens is a foreign insurer. Further, Texas Insurance Code article 1.14-1 does not require a Texas license since no insurance is being placed in Texas. Thus, defendants conclude, since Athens operates not only outside New York but also outside its State of domicile, it is unregulated by any State. The highly regulated nature of the interstate insurance industry is contrary to that analysis (cf., Zogg v Penn Mut. Life Ins. Co., supra). There is no doubt *826 that the bonds here were issued in violation of the Insurance Law.
Merely because Athens lacks a proper license does not end the inquiry. The court has carefully reviewed New York law; there is nothing which invalidates a policy issued by an insurer in violation of the Insurance Law. New York has a carefully constructed regulatory scheme designed to protect buyers and beneficiaries of insurance policies from the unscrupulous insurers. This scheme is designed to protect against the risks of dealing with improperly financed companies as well as against fraudulent practices. The court is troubled that the only sanction provided by the Insurance Law is a nominal monetary penalty, $1,500 to $2,500 (Insurance Law § 1102 [a]). There is nothing to prevent the improperly issued policy from being used to show that there is insurance in effect. The matter should obviously be addressed by the Legislature in the near future.
According to well-established, long-standing case law, bonds which fail to conform to the regulations are, nonetheless, valid and binding agreements enforceable at common law according to their terms (Goodwin v Bunzl, 102 NY 224, 227; Sklar & Cohen Woodworking Co. v Owen, 177 App Div 796, 797; Decker v Judson, 16 NY 439; Carl v Meyer, 51 App Div 5; Sheffield v Murray, 80 Hun 555; Miller v Youmans, 13 Misc 59, affd 153 NY 653; Bernardo v Steelco, 115 Misc 2d 1020, 1023; G.M.C. Process Corp. v United States Fid. & Guar. Co., 28 Misc 2d 725). Indeed, CPLR 2507 (b), which provides that where a party fails to justify a bond the undertaking is nonetheless valid according to its terms, is consistent with that body of law.
Also, under Texas law Athens is bound by the terms of the bond even though it may have been issued in violation of the Texas Insurance Code (see, e.g., Denton v Ware, 228 SW2d 867, 871 [Tex Civ App], overruled on other grounds United States Fid. & Guar. Co. v Bimco Iron & Metal Corp., 464 SW2d 353, 358 [Tex]; Home Forum Benefit Order v Jones, 20 Tex Civ App 68, 48 SW 219; Lloyds Cas. Insurer v Farrar, 141 Tex 497, 500-502, 174 SW2d 302, 303-304). Indeed, New York and Texas appear to have adopted the rule prevailing throughout the country (see, e.g., Maryland Cas. Co. v Marshall, 226 Ky 62, 10 SW2d 485; Stevenson v Morgan, 67 Neb 207, 93 NW 180; Martin v Bogard, 176 Ark 203, 2 SW2d 700; Tanquary v Bashor, 42 Colo 231, 94 P 22; Kotite v Title Guar. & Sur. Co., *827 191 Ill App 555; Haffner v Commerce Trust Co., 184 Okla 212, 86 P2d 331; cf., 13 Couch, Insurance § 47:3 [2d rev ed]).
CPLR 2502 (a) permits only two types of sureties: "1. an insurance company authorized to execute the undertaking within the state” or an individual. Without doubt, even though the bonds here may be valid and binding and insure against the risk specified, Athens is not "authorized to execute [the bonds] * * * within the state”. Therefore, as plaintiff contends, the bonds at issue here are invalid.
Plaintiff seeks to have the court immediately reinstate the notice of pendency. Nothing before the court shows that defendants knew that the bonds were issued by an unlicensed company that was prohibited from issuing the bonds or that the bonds were invalid. A proper balance of the equities requires that defendants be given 15 days from service of the order to be settled, with notice of its entry, within which to post new undertakings in the amounts previously set (see, Matter of Lindner & Bro. [Columbia Eng’g & Contr. Co.], 147 Misc 51). If the replacement bonds are not posted in a timely manner, the notice of pendency will be reinstated.

. Plaintiff raises several other objections to the Athens bond. Athens is under indictment in West Virginia for obtaining money by false pretenses for issuing a $1,000,000 surety bond for a $40,000 fee. In April 1990, the United States District Court for the District of Nevada granted the Federal Trade Commission’s application for an injunction preventing Athens from falsely representing that investments are protected by surety bonds. Further, a Dun & Bradstreet report shows that Athens has a questionable financial picture, since there is no independent corroboration of the assets listed on its financial statements. Those facts, even if proven, would not invalidate the bonds on their face but would require a factual hearing.

. That document certifies that there is the proper capital and surplus and that the insurer is qualified to issue the bond and that it is sufficient under the insurance law. A certificate of qualification "shall be in lieu of any justification required of the insurer by any law of this state or any requirement pursuant thereto” (Insurance Law § 1111 [c]; CPLR 2507 [a]; Schlesinger v Kaufman, 233 NYS2d 918).