[No. 24474.   Department Two.   January 15, 1934.]

PIERCE COUNTY, *on the Relation of John H. Dunbar, as Attorney General, Appellant,* v. FREMONT CAMPBELL, JR., *et al., Respondents.*[1]

*The Attorney General, John W. Hanna, Assistant,* and *Bertil E. Johnson,* for appellant.

*Ellis & Evans* and *Lloyd & McGavick,* for respondents.

GERAGHTY, J.—This action was brought by Pierce county, as plaintiff, on the relation of the *Attorney General,* against Fremont Campbell, Jr., W. V. Zelinsky, and the Continental Casualty Company, defendants, to recover moneys belonging to Pierce county, alleged to have been misappropriated by Zelinsky while serving as deputy county auditor under Campbell. In the original complaint, plaintiff sued upon two causes of action. The first sought recovery against the above named defendants; the second sought recovery on account of defalcations of Zelinsky under de-

[1]Reported in 28 P. (2d) 785.

fendant Campbell's successor in office. . The second cause of action was subsequently settled, and the defendants therein dismissed.

The amended complaint alleged the election and qualification of Campbell, as county auditor of Pierce county, for the term beginning January 10, 1927, and ending January 10, 1931; that Zelinsky was, during this term, regularly appointed and employed by Campbell as his deputy; and that the Continental Casualty Company was surety upon Campbell's official bond. Most of the other facts essential here are embodied in the third paragraph of the amended complaint, which reads:

"That plaintiff alleges the facts to be that during the term of office of defendant Fremont Campbell, Jr., hereinabove referred to, defendant W. V. Zelinsky collected and received from the Pierce County hospital the sum of $2,606.43 and from the tuberculosis sanatorium the sum of $4,024.45, and that he has failed, refused and neglected to pay over and account for the same or any part thereof to Pierce county and continues so to do; that plaintiff believes and therefore alleges the fact to be that said defendant W. V. Zelinsky appropriated and converted said sums of $2,606.43 and $4,024.45 to his own use or to the use of some other person or persons not lawfully entitled thereto; that the said sums represented funds of Pierce county earned from time to time in the operation and maintenance of its two said public institutions; that said funds should have been transmitted by the heads of the institutions to the county treasurer of Pierce county, but that defendant Zelinsky represented to them that he was authorized to accept and receipt for the funds as deputy auditor, which representations were made during such times as defendant Zelinsky was engaged in auditing the two institutions, and that but for the fact that defendant Zelinsky was duly appointed and acting deputy county auditor of Pierce county he could not have come into possession of said funds."

Zelinsky made no appearance in the action. Campbell and Continental Casualty Company filed general demurrers to the amended complaint, which were sustained by the trial court and the action dismissed. Plaintiff appeals.

Rem. Rev. Stat., §§ 4083 to 4105, inclusive, relate to the office and prescribe the duties of the county auditor. Section 4084 requires the giving of a bond in a sum to be fixed by the county commissioners, conditioned "that he will faithfully and impartially fulfill the duties of his office." It may be noted here that the bond filed by Campbell was conditioned that he should

". . . faithfully and truly perform all the duties of his office and shall pay over and account for all funds coming into his hands by virtue of his said office of county auditor, and shall well and faithfully discharge the duties of his office as required by law . . ."

Section 4088 is as follows:

"The auditor must examine and settle the accounts of all persons indebted to the county or holding moneys payable into the county treasury, and must certify the amount to the treasurer, and upon the presentation and filing of the treasurer's receipt therefor, give to such person a discharge, and charge the treasurer with the amount received by him."

Section 4093, providing for the appointment of deputy auditors, is as follows:

"The county auditors of the several counties may appoint deputy auditors, who shall be appointed in writing, and shall, before entering upon the discharge of the duties of their office, take and subscribe an oath faithfully to perform the duties of their office, which oath shall be indorsed on the appointment and recorded in the office of the county auditor. The county auditor shall be responsible for the acts of their deputies, and revoke their appointments at pleasure."

Section 4100 inhibits county auditors and their deputies from engaging in certain activities, and provides specifically:

"And the county auditor, during his term of office, and any deputy by him appointed, is hereby disqualified from performing the duties of any other county officer or acting as deputy for any other county officer."

In relation to the government of county hospitals and tuberculosis hospitals, Rem. Rev. Stat., § 6090-14, provides that all funds received from the operation of county hospitals are required to be paid into the county treasury, and § 6117 provides that the county treasurer shall be treasurer of any tuberculosis sanatorium operated by the county.

It appears from the allegations of the amended complaint that Zelinsky, as deputy auditor of Pierce county, was assigned by Campbell to audit the accounts of the county hospital and tuberculosis sanatorium maintained by Pierce county, as prescribed in § 4088, *supra*. It was his duty to examine and settle the accounts of those institutions, and if he found any moneys payable to the county treasury, to certify the amount to the county treasurer for collection, etc. The sums he is charged with misappropriating were payable to the county treasury, and it was his duty, under the law, to have so directed their payment, and in default of payment to have notified the county treasurer. Instead of doing this, he induced these institutions to entrust the money to him for delivery to the treasurer, and misappropriated the funds so entrusted to him.

The appellant contends that, in so doing, he was acting in virtue, or under color of his office, and that the rule announced by this court in *Skagit County v. American Bonding Co.*, 59 Wash. 1, 109 Pac. 197, and *Skagit County v. American Bonding Co.*, 59 Wash.

8, 109 Pac. 199, is controlling here. On the other hand, respondents contend that. Zelinsky, in taking the money, was acting wholly in a private capacity, and not either in virtue or under color of his office, and consequently, that the facts do not bring this case within the rule of the *Skagit County* cases.

We are at a loss to discover any essential difference between the facts in the case at bar and the *Skagit County* cases. If there is a distinction, it is a distinction without a difference, and too finely drawn to merit consideration. There were several acts of wrongful misappropriation of public funds involved in the *Skagit County* cases. Two of them closely resemble, in their legal aspect, the misappropriation charged in the complaint.

In one of the *Skagit County* cases, it appeared that sums of money for liquor licenses which should, in the first instance, have been deposited with the county treasurer, were left with the board of county commissioners, pending action upon the applications for licenses, and the money was turned over by the commissioners to the county auditor, acting as clerk of the board, for delivery to the county treasurer after the licenses had been granted. The auditor did not turn the money over to the treasurer, but appropriated it to his own use. In disposing of the contention that the auditor was acting in a private capacity, and not in virtue of his office or under color of office, the court said:

"The defendant bonding company contended, and the trial court held, that the applicants were required by the statute quoted to themselves pay the license fee directly to the county treasurer; that the auditor had no authority to receive it; that payment to him was in violation of the statute; that he simply became the agent of the applicants when he collected the fees; that

he did not act as county auditor; that he was not guilty of embezzlement in converting the money to his own use; and that the defendant bonding company is not liable as surety for the loss of such fees. This contention cannot be upheld. The statute does not explicitly provide that the fee should be paid to the county treasurer *by the applicant,* so as to exclude the idea that it might first be deposited with the county auditor by whom it would afterwards be paid to the treasurer in advance, when the license was granted. If the contention of the bonding company is well founded, it would necessarily follow that no legal payments have yet been made by the applicants to whom the licenses were issued, and that the county would have causes of action against them. But were suits for the fees to be instituted against them by the county, the applicants could undoubtedly avoid recovery, on the authority of *Seattle v. Stirrat,* 55 Wash. 560, 104 Pac. 834, recently decided by this court. The record shows that these license fees were paid by fifteen different applicants, and that a regular custom was followed in transacting the business. The county commissioners in each instance knew the money was in Blumberg's possession. They directed him to issue the licenses and to pay the fees to the treasurer. He issued the licenses, but unlawfully converted the fees to his own use. Subdivision 9, § 3917, Rem. & Bal. Code, directs that the county auditor shall, as clerk of the board of county commissioners, 'perform all other duties required by law or any rule or order of the board.' It was his duty under their orders to issue the licenses, and also to pay the fees to the county treasurer. It was not his duty to issue the licenses and embezzle the fees.'' *Skagit County v. American Bonding Co.,* 59 Wash. 8, 109 Pac. 199.

It is hard to find a distinction between that transaction and the one here involved. True, the court in that case commented upon the fact that the law made no specific provision as to how the money was to be paid to the treasurer, and referred to the practice that had obtained in disposing of applications for liquor

licenses, and to the fact that the money had been turned over to the auditor by the board. But that is the situation here. The law required these county institutions to forward to the county treasurer any moneys on hand belonging to the county. They entrusted the money for delivery to the deputy county auditor, the very officer appointed by law to enforce compliance with its requirements.

Another item in the *Skagit County* cases was the misappropriation by the auditor of fees collected by him for recording marriage licenses. These fees were not required by law, and it was argued that, since they were not required to be collected, the auditor was under no duty to account for them, and that, if any wrong was committed, it was a private wrong against the persons from whom he collected the fees. The court brushed this contention aside, and while conceding that the fees were not provided for by law, held that, since he collected them as auditor, he was bound, under the obligations of his office, to account to the county for them. And so in this case. The money entrusted by the county institutions to Zelinsky was, at the time of its delivery, county money, constructively in the possession of the county, and however it came into his hands, it was a breach of his duty to misappropriate it to his own use.

It is not contended, of course, that Campbell, the county auditor, committed any personal wrong. He is charged with responsibility here for the defalcation of his deputy, for whose acts, under the terms of § 4093, *supra,* he was responsible.

There is some suggestion in the briefs that the rule established in the *Skagit County* cases is an extreme one, and out of harmony with the decisions of the majority of the courts of last resort. Whether this be so

or not, we are satisfied with the rule announced in those cases. Those opinions, written by Judge Crow, and concurred in by Judges Rudkin, Dunbar, Mount and Parker, sitting in the department that heard the cases, established a salutary rule tending to safeguard public funds, and we are not disposed now to modify it.

The statutory obligation of the bond was that the county auditor would faithfully and impartially perform the duties of his office. Any breach of that obligation entailing a loss to the county would entitle it to recover under the bond. Let us assume that Zelinsky, instead of taking the funds belonging to the county, connived at their theft and misappropriation by others, and failed to report the fact, as would be his duty, to the county treasurer. Could it be said that, in doing this, he had not failed in his duty and breached the obligation of the bond? Certainly, his own illegal possession and misappropriation of the funds would not absolve him or his principal from liability, or be less a breach of official duty.

"The bonding company guaranteed the faithful performance of all acts of Blumberg in connection with his office and its duties. This guaranty means something. No embezzlement, misappropriation of funds, or other dishonest act, was any part of the duty of the county auditor. Faithful discharge of official duty contemplates not only the performance of those positive duties required by the statute, but also that the official will refrain from doing any fraudulent acts in connection with his office which he could not accomplish if he were not in official position." *Skagit County v. American Bonding Co.*, 59 Wash. 8, 109 Pac. 199.

The judgment of the trial court is reversed, and the case remanded for further proceedings in accordance with this opinion.

BEALS, C. J., BLAKE, and HOLCOMB, JJ., concur.

TOLMAN, J. (dissenting)—In my judgment, the facts here shown by the record distinguish this case from the *Skagit County* cases upon which the majority opinion is based. To apply the rule of the *Skagit County* cases to the facts here shown, is to extend that rule so as to make it out of harmony with the great weight of authority.

I therefore dissent.