[No. 35532.   En Banc.   May 22, 1962.]

THE STATE OF WASHINGTON, *on the Relation of John J.* O'CONNELL, *as Attorney General, Respondent,* v. GENE O. ENGEN *et al., Defendants,* KENNETH B. Moss *et al., Appellants.**

*Reported in 371 P. (2d) 638.

*Minnick, Hahner & Tuttle*, for appellants.

*The Attorney General, Robert F. Hauth* and *Gerald F. Collier, Assistants*, for respondent.

FOSTER, J.—The departmental opinion filed June 1, 1961, is withdrawn, vacated, and held for nought, and will not appear in the Washington Reports.

All parties, except Engen and wife, agree in a unique joint petition that the judgment is a final one which disposes of the entire litigation. We agree.

The action was instituted December 8, 1958, more than one year prior to the effective date, January 1, 1960, of the current rules of pleading, practice and procedure, and the judgment, likewise, antedated the effective date of Rule of Pleading, Practice and Procedure 42 (b), RCW Vol. 0, respecting judgments on multiple claims against multiple parties.

The prayer of the respondent's complaint is for $14,733.85, less an admitted credit of $2,500, making the total amount of the judgment $12,233.85. Liability for parts of the total sum was claimed against some of the appellants separately, but the judgment entered comprehended the whole amount so that the satisfaction of that judgment would be a complete bar to a further prosecution of claims against individual defendants for any part of the whole sum. The judgment under appeal is a complete adjudication of the entire controversy, and the only thing which prevented execution was the appellant's supersedeas bond.

The fundamental question raised by the appeal is the liability of the appellant Lacey, a former commissioner of finance of the city of Walla Walla, and the surety on his official bond, and appellant Moss, the former city clerk, and

the surety on his bond, for the alleged defalcation of Gene O. Engen, former deputy clerk.

The city of Walla Walla is a second-class city organized under the commission form of government. RCW 35.17.030 provides that cities organized under the commission form of government shall be governed by the statutes relating to cities of the second class. RCW 35.23.110 defines the duties of city treasurers in cities of the second class:

"The city treasurer shall:

"(1) Receive and safely keep all money belonging to the city from whatever source derived;

"(2) Place it to the credit of the different funds to which it belongs in a book kept for that purpose;

"(3) Disburse the funds of the city by direction of the council as authorized by law;

"(4) Report monthly to the city council the condition of the treasury."

It is to be noticed that, in the first subdivision of that statute, the city treasurer is obliged to receive and safely keep all city moneys from whatever source derived. The appellant Lacey was the city finance commissioner. Section 1.64.260 of the Walla Walla City Code, which is § 1 of ordinance 1594, adopted October 31, 1911, requires all fees collected by Walla Walla officials to be promptly turned over to the city treasurer.[1]

No provision of the ordinances of Walla Walla authorizing the clerk to receive fees in payment of license applications has been called to our attention, but § 5.04.010 of the Walla Walla City Code, which is § 1 of ordinance A-508, adopted

---

[1]"Hereafter all fees and charges collected or received by the officers, deputy officers and employees of the City of Walla Walla for any an[d] all purposes or services whatsoever shall, except where by law or ordinance directed to go into some other fund of the city, be promptly turned over to the City Treasurer and by him placed in the General Fund of the City; it being the purpose of this Section to continue the payment of all fees and charges now or hereafter prescribed by law or ordinance, but to limit and confine the compensation of officers, deputy officers and employees to the fixed salary or compensation prescribed by ordinance or the rules and orders of the superintendents of the various departments of the City affairs. (Ord. 1594 § 1; October 31, 1911)." Walla Walla City Code, § 1.64.260.

April 7, 1921, provides that the fees shall be paid directly to the city treasurer, and the clerk shall act only upon the presentation of a receipt signed by the city treasurer.[2]

RCW 35.23.190 provides for the bonds of the clerk, the city treasurer, city attorney and chief of police. The applicable portion of the section is:

"The clerk, treasurer, city attorney, chief of police, police judge and street commissioner shall each execute an official bond in such penal sum as the city council by ordinance may determine, conditioned for the faithful performance of their duties, including in the same bond the duties of all offices of which he is the ex officio incumbent."

■ No claim is made that any of the funds ever came into the hands of appellant Moss, the former city clerk, or appellant Lacey, the former commissioner of finance. Both Moss and Lacey were completely innocent and the losses for which this action is brought were occasioned entirely by the defalcations of the deputy clerk, Engen. By a long line of cases beginning with *Marx v. Parker*, 9 Wash. 473, 37 Pac. 675; *Fairchild v. Hedges*, 14 Wash. 117, 44 Pac. 125; *Kittitas Cy. v. Travers*, 16 Wash. 528, 48 Pac. 340; *Skagit Cy. v. American Bonding Co.*, 59 Wash. 1, 109 Pac. 197; *Skagit Cy. v. American Bonding Co.*, 59 Wash. 8, 109 Pac. 199; *Pierce Cy. ex rel. Dunbar v. Campbell*, 176 Wash. 203, 28 P. (2d) 785; *Grays Harbor Constr. Co. v. Paulk*, 179 Wash. 300, 37 P. (2d) 584; *Shelton v. Clapper*, 23 Wn. (2d) 811, 162 P. (2d) 445, the law is settled that public officials having the official custody of public funds are insurers, act of God or act of a public enemy alone excepted. The rule so an-

---

[2]"Hereafter whenever any person, firm or corporation shall desire a license to carry on any business, trade or occupation within the City of Walla Walla for which a license may be now or hereafter required, such person, firm or corporation shall make an application therefor in writing and file the same with the City Clerk. Upon the filing of such application the City Clerk shall refer the same to the City Commission for approval or rejection thereof in the discretion of the Commission and in case such application is approved the Clerk shall issue such license as applied for upon receiving from the applicant a receipt issued by the City Treasurer showing the payment of the required license fee therefor. (Ord. A-508 § 1; April 7, 1921)."

nounced in such cases is based upon constitutional or statutory provisions requiring such officials to safely keep and pay over such funds, and a bond so providing and for the faithful performance of official duties is a prerequisite to qualification for such office.

The narrow question then is: Does the defalcation of the former deputy clerk Engen render appellants liable therefor?

A very strong argument is made that the rule of absolute liability is limited to the official custodian of public funds. Many cases[3] reject the rule of absolute liability and declare an official who collects public funds without authority of law is a mere bailee.

■ *Skagit Cy. v. American Bonding Co.*, 59 Wash. 1, 109 Pac. 197, and *Skagit Cy. v. American Bonding Co.*, 59 Wash. 8, 109 Pac. 199, lay down a contrary rule which controls here. Those actions were against the surety of the deceased county auditor who collected license fees without authority of law, while the statute required such fees to be paid directly to the treasurer. The trial court held in favor of the surety:

" . . . that the applicants were required by the statute quoted to themselves pay the license fee directly to the county treasurer; that the auditor had no authority to receive it; that payment to him was in violation of the statute; that he simply became the agent of the applicants when he collected the fees; that he did not act as county auditor; that he was not guilty of embezzlement in converting the money to his own use; and that the defendant bonding company is not liable as surety for the loss of such fees. . . . "

That judgment in favor of the surety was reversed because we held that, if the surety's view was correct, payment of the fees to the auditor would have been no payment at all and the county could thereafter collect such fees from the license applicants. We held:

[3]*York Cy. v. Watson*, 15 S.C. 1, 40 A.R. 675; *Maloy v. Board of Cy. Com'rs*, 10 N.M. 638, 62 Pac. 1106; *Colorado v. Walsen*, 17 Colo. 170, 28 Pac. 1119; *Chandler v. Britton*, 197 S.C. 303, 15 S.E. (2d) 344; *Bonneville Cy. v. Standard Acc. Ins. Co.*, 57 Idaho 657, 67 P. (2d) 904.

" . . . If the contention of the bonding company is well founded, it would necessarily follow that no legal payments have yet been made by the applicants to whom the licenses were issued, and that the county would have causes of action against them. But were suits for the fees to be instituted against them by the county, the applicants could undoubtedly avoid recovery, on the authority of *Seattle v. Stirrat,* 55 Wash. 560, 104 Pac. 834, . . ."

The reason for imposing the liability on the auditor was stated as follows:

"If Blumberg had not been auditor he could not have obtained possession of the liquor license fees, nor could he have issued the licenses. Without issuing the licenses he could not have misappropriated the money. The county sustained loss by reason of his malfeasance, dishonesty, and corrupt use of the opportunities afforded by his position as auditor. The undertaking executed by the bonding company guaranteed faithful and diligent performance of the duties of his office according to law, and payment to the proper officer of all moneys that might come into his hands. He did neither, and the defendant is liable for the resulting financial loss sustained by the county. The trial court erred in holding that the plaintiff was not entitled to recover for the liquor license fees embezzled by Blumberg, but should have allowed plaintiff $5,700, which was the amount he received, after deducting his payment of $500 to the state."

The only difference is that we have here the act of a deputy instead of the officer himself. But *Pierce Cy. ex rel. Dunbar v. Campbell, supra,* held this to be a distinction without difference. Reaffirming the *Skagit County* cases, it was there specifically decided that a county auditor was liable for his deputy's defalcations of funds collected without sanction of law.

While the treasurer alone had the authority to receive the license fees involved and the city clerk received them without sanction of law, nevertheless, the deputy clerk did receive them by virtue of his position and could not have obtained them otherwise. The rule announced in the cited cases, which we now reaffirm, is that the liability of such an official for misappropriation of funds so received is the same as the liability of the official custodian of such funds.

The appellant Lacey and his surety, the Hartford Accident and Indemnity Company, are in a different category, however. The rule of the *Skagit County* cases, as extended by the *Pierce County* case, is not controlling as to them. The only basis for liability on the part of appellant Lacey for the defalcations of the deputy clerk is because Lacey held the position of finance commissioner. He was not city clerk. Admittedly, Lacey had no knowledge of the shortages and was not the collector or the custodian of the funds which never came into his possession, either constructively or actually. The commissioner, under the commission form of government, did not displace the city clerk and the city treasurer.

The judgment as to the appellant Lacey and his surety is, therefore, reversed, and affirmed as to the other appellants.

FINLEY, C. J., HILL, DONWORTH, WEAVER, ROSELLINI, OTT, and HUNTER, JJ., concur.

July 6, 1962. Petition for rehearing denied.